THOMAS B. LEE v. SAMUEL H. KING AND ANOTHER.

A sale made by order of the Probate Court on the petition of the administrator under the law of January 16th, 1843, (Hart. Dig. Art. 1067,) is good.

The decision of the Supreme Court of the United States in the case of Calkin & Co. v. Cocke, (14 How. 227,) determining that the Constitution and Laws of the United States were in force in Texas immediately upon her admission as a State, adopted, though not concurred in, by this Court.

Appeal from Kaufman. Tried below before J. C. Robertson, Esq., Special Judge.

Action for trespass on land.

This cause was submitted to the Judge upon an agreed statement in substance as follows : The plaintiffs are the children and heirs of W. P. King, to whom the land in controversy was originally granted and through whom both parties claim. That W. P. King having died, his succession was opened in 1841 and was regularly continued by the appointment of different administrators down to 25th July, 1842, when Frances A. King was appointed administratrix *de bonis non* of his estate and qualified and was continued until September, 1845, when, on the petition of several creditors of the estate, she was ordered by the Probate Court to sell the lands of her intestate, embracing the lands in controversy. On the 29th October, 1845, she resigned, and on the 27th day of December, 1845, N. Amory was appointed administrator *de bonis non*. On 30th December, 1845, Amory filed his petition in the County Court alleging that the estate was indebted to various persons in large amounts, and prayed for an order to sell the lands in controversy, among others. On the same day the order was made, and after a full compliance with all the requisites of law governing probate sales at that date, the

same was sold under the order made upon his application by the administrator in the proper county, on the 3rd day of February, 1846, and was purchased by Wm. M. Beal, who then resided in and was a citizen of New Orleans, State of Louisiana, for the sum of one thousand dollars, which was paid to the administrator ; the sale and proceedings were reported to the County Court as required by law and confirmed at its next session after the sale, and the lands conveyed by deed from said administrator to Beal. And that in April, 1852, Beal sold and conveyed the land to the defendant Lee.

There was a judgment for the plaintiffs. Motion for new trial made and overruled.

*Donley & Anderson*, for appellant. I. The whole tenor of the American decisions is to the effect that the title of an alien friend to land purchased, is good against every body but the State and his rights vest in his representatives, and can only be divested by office found, or by some act done by the State to acquire possession. (Jenkins v. Nael, 3 Stewart, 60 ; Craig v. Leslie, 3 Wheat. 589 ; Dor v. Robertson, 11 Wheat. 332 ; Dualey v. Grayson, 6 Monroe, 260 ; Jackson v. Adams, 7 Wendell, 367 ; Fairfax devisee v. Hunter's lessee, 7 Cranch. 603.) And until the land is seized by the State the alien has complete dominion over it, and can convey it to a purchaser, or maintain an action to recover it. (Bradstreet v. Supervisors, &c., 13 Wendell, 546 ; Scanlan v. Wright, 13 Pickering, 523.)

II. Although Beal was a citizen of the State of Louisiana on the 3rd of February, 1856, as there was no action on the part of the Government to divest him of his title before annexation, that he then became a citizen of Texas, and even the State could not by inquest of office found, or otherwise, divest him or his vendee of the title to the land. In support of the first proposition, that he became a citizen, we will refer

to Cryer and wife v. Andrews, (11 Tex. R. 170,) and in support of the second proposition, that upon his becoming a citizen that thereby he took the title absolutely even against the State, by relation to his purchase. (Doe *ex dem.* Governeais Heirs, 11 Wheaton, 332 ; 6 Id. 614.)

III. We submit that the Constitution does not prohibit aliens from taking titles to lands, but only as holding against the Republic ; and that as they are not prohibited from taking title, that the prohibition is not strong enough to make a title void, but in fact goes only to show the extent of the Common Law.

In Craig v. Leslie, (3 Wheaton, 587,) Mr. Justice Washington comments very forcibly on the distinction between taking and holding, and shows we submit very clearly that the distinction is an important one. He elucidates the subject by showing the difference between the Common Law and the Statute of 11 and 12 William III, and "says the incapacities of a Papist under the English Statute above and of an alien at Common Law are extremely dissimilar ; the former is incapable to take by purchase any lands or profit out of lands ; and all estates, terms, and any other interest or profits whatever out of lands to be made, suffered, or done, to or for the use of such person, or upon any trust for him, or to, or for the benefit, or relief of any such person, are declared by the Statute to be utterly void.

After quoting the terms of the Statute, Judge Washington continues, " Thus it appears that he cannot even take, * * *." Now, what is the situation of an alien? He can not only take an interest in land, but a freehold interest in the land itself and may hold it against all the world but the King, and even against him till office found.

*Jno. E. Cravens*, for appellee. I. The plea that the plaintiff is an alien interposed to a real action, or one for the recovery of the land, goes in general to defeat the right of

action altogether upon principle of public policy which denies the right of an alien to inherit or hold land. (Hardy v. De Leon, 5 Tex. R. 211.) In support of this position Judge Wheeler cites the following authorities: Bac. Ab. Use and Trusts, E. 2; 1 Id. Title Aliens, 65; 7 Cr. Co. 3, 4; U. S. Cond. R. 347, n.; 1 Pet. C. C. R. 40. Subsequent to the delivering of this Opinion, Ch. J. Hemphill, in the case of Lee v. Salinas, (15 Tex. R. 495,) leaves the question open as to whether the plea of alienage shall be allowed to defeat a title acquired by purchase.

II. At Common Law a alien could not take title to land by decent or devise, and a will made disposing of land to an alien is void, and it will decend to the heir, or escheate to the Government. (Hunt v. Warmick's heirs, Harden's Kentucky Rep. 61; Jackson v. Lawn, 3 John. Ch. Cas. 109; 2 Kent Com. 15; Orr v. Hayson, 4 Wheaton, 452.)

III. But an alien could take by purchase at Common Law, and his estate was absolute, subjected only to the qualification that the estate might be defeated by a suit by the Crown, or the Government. He could not only defend his possession, but under the liberal view taken of this character of title by the Supreme Court of the State of New York in the case of Bradstreet v. The Supervisors of Oniedo County, (13 Wendell,) he might maintain a suit for the land.

*Jno. J. Good,* for appellee. I. When did Texas cease to exist as a Republic and become incorporated into the American Union as one of the States thereof?

It is true Congress, as appears from the legislation upon that subject, regarded it as a State from and after the passage of the Act providing for its admission, but the transition was not the change of a territory of the General Government to that position, nor was it the result of a cession, purchase or conquest from a foreign power. It was a solemn contract by and between two free and independent Governments on an

equal footing, by which one agrees to dispense with a portion of its sovereignty and become part and parcel of the other, and the other to receive it on certain terms stipulated.

Congress could not, by its simple act or resolution, blot out a Republic and create a State, and while her action may be regarded as persuasive of the law it certainly is not conclusive. Texas, as one of the contracting parties, has an equal right with the United States to fix that important period, and neither the Legislature nor Judicial branches of the General Government has the right to supervise her action in regard thereto.

1st. The new Government did not exist until the old had expired. (Owen v. Speed, 5 Wheaton, 420 ; 4 Cond. R. 714.)

2nd. That the Republic did exist in all its force and vigor until the organization of the State Government, was so regarded by the Executive Legislation and Judicial branches of the Republic, and since, her admission has been settled by the highest Judicial tribunal of the State. (6 Art. 13 Dig. 81 ; Sec. 9, Art 13, Hart. Dig. 82 ; Cock v. Calkin & Co., 1 Tex. R. 542 ; Address of President Jones at organization of the State Government.)

HEMPHILL, CH. J.   The sale was not void on the ground that the order of sale was made by the Probate Court on the petition of the administrator, (the law of January 16th, 1843, being then in force.) This has been settled in Maverick v. Alexander, (18 Tex. R. 179,) and Allen v. Clark's heirs, decided at the present Term of the Court.

Nor is it void on the ground that Wm. M. Beal, the purchaser, was a citizen of Louisiana at the time of the sale, namely on the 3rd day of February, 1846.

It has been set up that Beal was an alien at the time of the sale, and arguments of much research and ability have been presented by counsel for and against the proposition that aliens,

under the Constitution of the Republic of Texas, could not take lands by purchase.

One of the counsel for appellees has briefly but forcibly maintained the position that the Constitution and Laws of the United States were not in force in Texas until the 16th February, 1846, nor were the Constitution, Laws and Government of the Republic of Texas abrogated or superceded until that day.   We concur in these propositions and attempted to maintain them in Cocke v. Calkin & Co., (1 Tex. R. 542,) but the record of that cause having been taken to the Supreme Court of the United States, that tribunal decided, that · by the Acts admitting Texas into the Union, extending over it the laws of the United States, &c., on the 29th December, 1845, the old system of Government so far as it conflicted with the Federal authority was abrogated, and in substance that the Constitution and Laws of the United States were in force in Texas immediately upon her admission as a State.

The Government of Texas having employed counsel to sustain the defence in that cause and having manifested no special purpose to contest further the positions assumed in support of the Federal authority, this Court, though not assenting to these assumptions, or that they arise fairly upon the acts of the parties resulting in annexation, felt under no obligation to continue the controversy, and has felt none to renew it as often as occasion might present itself.

If it be admitted then that the views in Calkin & Co. v. Cocke, (14 Howard, 227,) are a sound interpretation of the acts which together formed the compact between the two nations, it results of necessity that Wm. M. Beal, the purchaser, was not an alien to Texas on the 3rd of February, 1846.   As a citizen of Louisiana he was, under the Constitution of the United States, (Art. 4, Sec. 2,) entitled to the privileges and immunities of the citizens of Texas.

If the decision in 14th Howard is to be respected by Texas

at all, its operation in cases of this character, protecting purchasers in good faith would be a source of satisfaction, certainly if a citizen of the United States is to be protected from paying import duties he should be relieved from the disabilities of alienage. The question so ably argued in respect to the disability of aliens does not arise under this view of the case, and the judgment for the defendants being erroneous it is ordered that the same be reversed, and the cause having been submitted to the Court without the intervention of a jury on an agreed state of facts, it is ordered that judgment be entered for the defendant below, being the appellant in this Court.

Reversed and rendered.