## OSTERMAN v. BALDWIN.

1. A citizen of the United States, and who, as such, was of course before the admission of Texas into the Union, an alien to that republic, and so, as against office found, incompetent to hold land there, became on the admission, competent, no office having been previously found.
2. A purchaser at sheriff's sale buys precisely the interest which the debtor had in the property sold, and takes subject to all outstanding equities.
3. Trusts of real estate are not embraced by the statute of frauds of Texas, and may be proved, as at common law, by parol.
4. A mere declaration in writing by a vendor of a vendee's purchase of land, that the vendee had paid the money for it, and that the vendor intended to make deeds when prepared to do so, is not a document purporting to convey title; and accordingly will constitute neither a link in "a consecutive chain of transfer," nor "color of title" within the meaning of the fifteenth section of the statute of limitations of Texas.

APPEAL (submitted) from the District Court for the Eastern District of Texas.

In 1839, prior to the admission of Texas into our Union, and that country being then an independent republic, Bald-

---

\* 24 Texas, 596. See also Wright v. Daily, 26 Id. 730; Berry v. Donley, Id. 737; Harris v. Hardeman. 27 Id. 248.

win, a citizen of New York, and an alien, of course, to Texas, purchased and paid for three lots in Galveston, from the Galveston City Company, a corporation created by law, with power to sell real estate, and which owned the lots sold. As the company was not at the moment ready to execute deeds, he received certificates of the purchase. These described the purchased lots, acknowledged the receipt of the purchase-money, and added that Baldwin was entitled to receive a conveyance, so soon as the company was prepared to execute deeds in proper form. These certificates were made out in Baldwin's own name. The constitution of Texas, however, prohibiting aliens from holding lands there, he transferred them to James S. Holman, a Texan; the purpose having been "to place the lots in the hands of a citizen to watch over and protect them, for the payment of taxes and otherwise." No consideration moved from Holman, and the transfer was on an express agreement (made only by parol, however), that Holman was to hold the lots, and take a conveyance of them from the company, as Baldwin's trustee. The certificates were placed in an envelope, on which was indorsed a memorandum, thus:

"No. 113.
"JAMES S. HOLMAN.
"Lots No. 5 and 11, in block 617, &c. &c.,
"In trust."

This envelope, with the certificates inclosed, was subsequently found in the office of the company, having, as was said by the one side, been left there for safe keeping at the time, and by the other, having been brought there in order that a deed might issue to Holman, and surrendered and filed on the issue of a deed accordingly. The letters and figures, "No. 113," indicated the number of the deed to be issued for these lots.

In September, 1846, the lots were levied on by the sheriff of Galveston County, upon a judgment obtained by one McKinney against Holman. Notice was given to McKinney of Baldwin's ownership of the lots, and that Holman had never had any interest in them, except as trustee for Baldwin.

At the sale, October 6th, 1846, full notice was read aloud by Baldwin's agent, to the persons assembled, of Baldwin's claim to the lots, and of the exact state of his title. The sale was then proceeded with, and one lot was struck off to Osterman, others to other persons. The purchasers took possession.

In May, 1850, *that is to say, more than three years after the sale,* Baldwin filed a bill in the District Court for the District of Texas, making the Galveston City Company, Holman, Osterman, McKinney, and others, defendants; and praying that the Galveston City Company might be directed to execute a conveyance in fee simple to him, that the sale and proceedings under the judgment and execution against Holman might be declared void, and the defendants enjoined from setting up title under the same, and be ordered to deliver up possession of the lots held by them respectively.

The defences set up were:

1. Baldwin's alienage and consequent incapacity to hold; that even if the lands were meant to be held by Holman in trust for him, the trust was void; that on this part of the defence it mattered not whether there was a deed or certificate, Holman's estate, if but equitable, being liable to levy and sale; that however a deed was made.

2. That if these defences failed, the suit was barred by the statute of limitations of Texas.

As to the fact whether any deed had been made to Holman, the testimony was not quite consistent. On the one hand, the secretary of the company, the complainant's witness, testified thus:

"Whenever the holder of a certificate wished a deed, he produced his certificate to the company and delivered up the same, and the company issued a deed to him. The certificate was then filed away in the records of the company. Books were kept showing the issue of deeds upon the certificates, by memorandum entered against the number of the lot. All the certificates in this case were filed away in the records of the company, in the same place and manner, with the certificates upon which deeds had been issued. The books and records of the company

bear the same evidence of a deed to Holman on these certificates, that they do of the issue of any deed whatever. If the records of the company are true, a deed issued to Holman. The memorandum No. 113, in the envelope, indicates that that was the number of the deed issued on the certificates."

On the other hand, Holman himself remembered no deed: and one Edmunds, the agent of McKinney, who seemed to manage the whole matter of the execution under a bargain for a large contingent share of its proceeds, twice examined the books of the City Company, once by himself and once ("thinking it an important matter") with another person, an attorney-at-law,—and found that the books "showed that no deed had then been issued," and that "the title still appeared to be by certificates in the name of Holman."

As respected a bar by the statute of limitations, the second defence set up, it appeared that the Texas act in its fifteenth section ran thus :*

"Every suit to be instituted to recover real estate as against him, her or them in possession under title or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterwards. By the term *title* as used in this section, is meant a regular chain of transfer from or under the sovereignty of the soil; and color of title is constituted by a consecutive chain of such transfer down to him, her or them in possession, without being regular; as if one or more of the memorials or muniments be not registered or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of head-right, land warrant or land scrip, with a chain of transfer down to him, her or them in possession."

The District Court decreed in favor of the complainant. The purchasers appealed; Holman and the company not denying Baldwin's equities, and acquiescing.

---

* Paschal's Digest, Art. 4622.

*Messrs. Adams, Coombs, and Ballinger, for the appellants:*

1. The evidence of the deed's having issued, greatly preponderates over that of its having not issued. The possession by the company among *its* papers, of the certificates, the only evidence of individual ownership, and the testimony of the secretary of the company, offered a strong presumption that there was a deed. The purpose of conveying to Holman was that a deed should issue to him. It matters not, however, as respects this branch of the defence, whether Holman's title were legal or equitable, if *he* had the real title—of any kind. Equities can be levied on in Texas as well as legal estates.

2. He had such title. It having been illegal for the complainant to hold lands in Texas at the date of these assignments, the law did not imply, create or allow any trust whatever in his favor, nor create one in favor of the government of Texas; but Holman took and held the property free and clear of any trust or right whatever for or on the part of Baldwin or the government.*

Nor did the admission of Texas into the Union help the matter. The law not having previously raised or recognized any trust in behalf of Baldwin, nor of the government as the sovereign, by escheat or other paramount right, no trust or right of any kind in his favor was created by that political act.

At best, the only evidence of any trust in favor of Baldwin was parol; a dangerous sort of proof on which to rest the title to real estate; and a sort which the British statute of frauds would not allow to be given in such a case.

3. If Holman was thus the sole owner—either legal or equitable—Baldwin had no title, and the various notices were of no value. They were notices of nullities.

Waiving all these points, however, we have above and independent of the other defence—

---

* Hubbard *v.* Goodwin, 3 Leigh, 492; Leggett *v.* Dubois, 5 Page, 114; Taylor *v.* Benham, 5 Howard, 270; Phillips *v.* Crammond, 2 Washington's Circuit Court, 447.

4. *The Statute of Limitations.*   If the Galveston City Company made a deed to Holman, then the appellants had a "regular chain of transfer" with the single exception from its regularity that the deed to Holman was not recorded, a circumstance which confessedly would not affect it.   We have referred to the evidence of the existence of the deed. "A regular chain of transfer" relates to the deeds, the muniments, the paper evidences of right.   If on their face, they constitute a title, the actual nature of that title, arising from extrinsic facts, from the existence of a superior or better title, either in the first link by a previous grant from the government, or in any subsequent link by a previous better conveyance, is unimportant.   If possession be held three years under a chain of deeds from the sovereignty of the soil, by the 15th section the character of the actual title at any point of the chain is unimportant.'   "Intrinsic fairness and honesty" is not a question where a regular chain of transfer is shown.   They apply to *color of title* where the transfers are not regular.   But the meaning is, not that the consecutive chain of transfer, or any link of it, must be fair and honest in relation to the adverse, better title, but simply that if one or more of the links, instead of being a regular deed—for instance, from A. or B.—is such a transfer of the right of A. or B., whatever that right is, as amounts fairly and honestly to a conveyance of it, then it constitutes color of title.   In short, "title" is *legal;* "color of title" is *equitable.**

*Messrs. Sherwood and Goddard, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

It is true, as the defendants insist, that when the purchases were made by Baldwin, Texas was a foreign country, with a constitution forbidding aliens to hold real estate. But the defendants cannot object on that ground.   Until office found, Baldwin was competent to hold land against third persons.   No one has any right to complain in a col-

---

* Pearson *v.* Burdett, 26 Texas, 157; Wallace *v.* Wilcox, 27 Id. 60.

lateral proceeding, if the sovereign does not enforce his prerogative. This court, in *Cross* v. *De Valle*,\* say: "That an alien may take by deed, or devise, and hold against any one but the sovereign, until office found, is a familiar principle of law, which it requires no citation of authorities to establish." Even if the defendants could have made this objection, while the Republic of Texas existed, they cannot make it *now*, because, when Texas was admitted into the Union, the alienage of Baldwin was determined. His present status is that of a person naturalized, and that naturalization has a retroactive effect, so as to be deemed a waiver of all liability to forfeiture, and a confirmation of his former title.†

It is insisted the legal title to the lots in controversy, is in Holman, by deed from the Galveston City Company, and if so, that the execution against Holman was properly levied on them, and they were rightfully sold.

There is evidence tending to show a deed to Holman, but it falls short of proving it. It is almost certain a deed was never made, and quite certain, if made, it was never delivered. Holman, who ought to know, has no recollection about it, and he is fortified by Edmunds (the active agent in hunting up property to levy on), who swears, the books of the company were examined, and did not show the making of the deed—a matter deemed of importance by him and his attorney. The deed is not produced; is not recorded; the directors who must have executed it, are not called; and its existence is but a matter of conjecture.

Even if made and delivered, it cannot help the title of the defendants, for the sheriff sold with express notice of Baldwin's rights, and his intention to enforce them, and no one who bought can be considered an innocent purchaser for value. If Holman had the bare, naked, legal title, without any beneficial interest in the property sold, and no possession, nothing passed by the sale. A purchaser, at a sheriff's sale, buys precisely the interest which the debtor has in the property sold, and takes subject to all outstanding equities.

---

\* 1 Wallace, 8.        † Jackson *v.* Beach, 1 Johnson's Cases, 401.

But no deed was, in fact, made, and the legal title is still in the Galveston City Company. If, in equity Baldwin is entitled to have that title conveyed to him, the defence in this case must fail, unless the plea of the statute of limita-. tions can be successfully maintained.

It is proven, beyond dispute, that Baldwin purchased the lots and paid the money for them, and that Holman had no interest in them.

It is in equal proof, that Holman agreed to hold them in trust for Baldwin—the object being to place them in the hands of a citizen of Texas, who could pay taxes and protect them. The trust, thus created, is an express trust—not one resulting by implication of law—proved, it is true, by parol, but equally efficacious for the purposes of this suit, as if in writing. The declaration of an express trust, under the statute of frauds of 29 Charles II, was required to be in writing, and could not be proved by oral testimony. But the courts in Texas hold, that trusts are not embraced in their statute of frauds, and that a trust may be proven as at common law, by parol evidence.* The equitable title is, therefore, in Baldwin, and there is no reason why he should not have the legal title also, unless his rights are cut off by the statute of limitations.

The defendants claim that they have possessed the land peaceably for more than three years, under title, or color of title, derived from the sovereign authority, thus claiming the benefit of the fifteenth section of the act of limitations of Texas.† But this claim is unavailing, because one link in "the chain of transfer," from the government down to the defendants, is broken. There is no conveyance from the Galveston City Company to Holman. A "consecutive chain of transfer" is required by the statute, and the writing possessed by Holman is not, in any legal sense, a link in that chain. It does not purport to convey title. It is nothing more than a declaration by the company of the purchase of the lots, the payment of the money, and the intention to

---

* Miller *v.* Thatcher, 9 Texas, 484.    † Hartley's Digest, Art. 2391.

make deeds, when prepared to do so. If this writing, upon its face, professed to pass title, but failed to do it, either because the city company had no title, or for want of proper execution, it could be used as color of title. But an agreement to convey title at some future period, is not color of title, within the meaning of the law.

The Supreme Court of Texas has decided the precise question here presented. That learned court, in discussing this subject, in *Thompson* v. *Cragg*,\* say: "Nor can there be color of title, as defined by the statute, where there is a complete hiatus in the chain. Color of title differs from title only in externals. The substance of both is the same. Were this not so, if color of title were something intrinsically and substantially less, or weaker than title, then the wisdom of the legislature could not be vindicated in applying the same period of limitation to a possession supported by the one as is applied to a possession supported by the other."

DECREE AFFIRMED.

[See *supra*, preceding case, *League* v. *Atchison*, in regard to this same statute of limitations in Texas.—REP.]