NICHOLAS HANRICK ET AL. V. EDWARD G. HANRICK ET AL.

(Case No. 799.)

1. ALIENAGE — STATUTES CONSTRUED. — The act "to define the civil rights of aliens," of February 13, 1854, did not in express terms repeal section 9 of the act of March 18, 1848, entitled "An act to regulate descent and distribution of estates," nor is the former act so directly and irreconcilably opposed to section 9 of the act of 1848, as to repeal that section by implication.

2. ALIENAGE — STATUTES CONSTRUED. — The act of February 13, 1854, was an affirmative and enlarging statute, which intended to give to aliens such rights and privileges, in addition to those granted by section 9 of the act of 1848, as had been or should be given by the government to which the alien belonged, to citizens of the United States.

3. ALIENAGE — STATUTES CONSTRUED. — When the government of the United Kingdom of Great Britain and Ireland passed the act of 1870, to the extent that it conferred benefits on citizens of the United States, it was, by virtue of the provisions of our statute of 1854, immediately engrafted upon it, and became the law defining the rights of alien citizens of Great Britain and Ireland to real estate in Texas; section 9 of the act of 1848 was, as to such aliens, so far modified as to change their previous defeasible estate thereby given, into an indefeasible estate.

4. ALIENAGE — STATUTES CONSTRUED. — The effect of the constitution of the republic, of the act of January 28, 1840, and the act of March 18, 1848, upon the subject of alienage, was to vest a defeasible title to real estate in Texas, in the alien children and heirs of a citizen of

the United States who may have died intestate, leaving such property; such title was valid against individuals as well as against the state, not only for the period of nine years, but for such further time as might elapse until the state should, by proper proceedings, declare a forfeiture.

5. CASES APPROVED.—Cryer v. Andrews, 11 Tex., 170; Wardrup v. Jones, 23 Tex., 489; Lee v. King, 21 Tex., 582; Osterman v. Baldwin, 6 Wall., 116, approved.

APPEAL from Falls. Tried below before the Hon. L. C. Alexander.

*Belcher & Ring,* for appellants.

*Goodrich & Clarkson,* for appellee.

I. No title, defeasible or indefeasible, vested in plaintiffs, who are aliens, and not let into the inheritance by any of the provisions of the act of 1854. Pasch. Dig., arts. 45–48; White v. Sabriego, 23 Tex., 245; Andrews v. Spear, 48 Tex.

·II. The portion of section 9 of the act of 1848 inconsistent with the act of 1854, is that portion which appellants construe to confer a right of inheritance on aliens, and is therefore repealed by act of 1854, leaving in full force the limitation clause of nine years; and that the only effect of the English naturalization act of 1870 was to call into operation our reciprocity act of 1854, and for the future to give aliens rights of inheritance the same as citizens, provided they claim the inheritance within nine years after descent cast.

III. An alien cannot maintain a real or a mixed action in Texas except by virtue of the provisions of the act of 1854. White v. Sabriego, 23 Tex., 245.

IV. No person can inherit through a living ancestor. Pasch. Dig., art. 3419; McCreery's Lessee v. Somerville, 9 Wheat., 355. It appears that Nicholas, Annie and Ellen Hanrick are aliens. James Hanrick, the father of said parties, died in 1875, in Ireland, never having been a cit-

izen, but was an alien. "And Ellen, Annie and Nicholas Hanrick are now residing in the United States." Pasch. Dig., arts. 5395, 5410.

BONNER, ASSOCIATE JUSTICE.— In this case we have derived valuable aid from the elaborate briefs of counsel.

It is presented under rule 59 of this court, under the following agreement:

"It is agreed that the material allegations in plaintiffs' amended original petition, and in defendant Edward G. Hanrick's exceptions to the same, were substantially as follows, to wit:

"Plaintiffs alleged:

"That Edward Hanrick, the ancestor of both plaintiffs and defendant, died intestate and without issue [having never married], in Montgomery county, Alabama, in the year 1865, the sole owner of the lands described in plaintiffs' petition.

"That at the time of his death, in 1865, he left surviving him as his next of kin, two brothers, James and John Hanrick, a sister, Elizabeth O'Brien, and a nephew, Edward G. Hanrick, the defendant, and son of Philip Hanrick, deceased, who was a brother of the said Edward Hanrick, and a citizen of the United States and the state of Alabama, and who died in Alabama in 1852.

"That the said John Hanrick, James Hanrick and Elizabeth O'Brien were at the time of the death of Edward Hanrick, subjects of Great Britain, living in Ireland, and aliens to the United States and state of Texas.

"That the said John Hanrick, subsequent to the death of the said Edward Hanrick, died intestate, in the year 1871, in Ireland, without issue, having never married and never having been a citizen of the United States, but being an alien to the United States and the state of Texas, and a subject of the Queen of Great Britain.

"That in the year 1875, James Hanrick died in Ireland,

he also never having been a citizen of the United States, but being an alien to the United States and the state of Texas, and a subject of the Queen of Great Britain, and left surviving him as his next of kin the following named children, to wit: Nicholas, Ellen and Annie Hanrick, Elizabeth Clare, the wife of Thomas Clare, and Catherine O'Neill, the wife of Martin O'Neill, and the four minor plaintiffs, his grandchildren, and the children of Mary Hanrick, who was the wife of Peter Whelan.

"That the said Ellen, Annie and Nicholas Hanrick are now residing in the United States.

"That the said Elizabeth Clare, Catherine O'Neill, and the four minor plaintiffs, were at the time of the death of James Hanrick, and are still, living in Ireland, subjects of the United Kingdom of Great Britain and Ireland, and being aliens to the United States and state of Texas.

"That Elizabeth O'Brien, the sister of Edward Hanrick, and one of the plaintiffs, was at the time of the death of the said Edward Hanrick, and still is, living in Ireland, a subject of said kingdom, and alien to the United States and state of Texas.

"That the defendant, Edward G. Hanrick, who is a native born citizen of the United States, has taken possession of the lands described in plaintiffs' pleadings, claiming to be the sole heir of the said Edward Hanrick.

"That plaintiffs claimed in their petition, that on the death of the said Edward Hanrick his real estate in Texas descended and vested in those of his heirs who were aliens, to wit: John and James Hanrick, and Elizabeth O'Brien, by virtue of the provisions contained in section 9 of an act entitled 'An act to regulate the descent and distribution of intestates' estates, approved March eighteenth, eighteen hundred and forty-eight,' which said section was set forth in substance.

"That plaintiffs further alleged that under and by vir-

tue of the provisions of a general public statutory law, enacted in said United Kingdom on the ——— day of 1870, and which hath been ever since, and still is, in full force and effect in said kingdom, all the rights of natural born subjects of said kingdom, both in and to the acquisition, taking, holding and disposition of real and personal property of every description situated within said kingdom, are expressly given to and conferred upon aliens; and by virtue of said statutory provision, a title to real and personal property of every description within said kingdom may be derived through, from, or in succession to an alien in the same manner in all respects, as through, from, or in succession to a natural born subject of said kingdom.

"That under and by virtue of said provisions, citizens of the United States are entitled to all the rights of natural born subjects of said kingdom in regard to the taking, holding and acquisition of real and personal property within said kingdom.

"That plaintiffs claimed that by virtue of said statutory acts set forth in substance, and by virtue of the general laws of Texas, they were entitled to an undivided two-thirds interest in and to the lands sued for in their petition.

"That defendant, Edward G. Hanrick, excepted to plaintiffs' petition on the following grounds, to wit:

"That it did not appear that on the date of the death of Edward Hanrick, to wit: in the year 1865, an alien to the United States and subject of the Queen of Great Britain and Ireland could by the laws of Texas then in force, inherit real estate in the state of Texas, or that a citizen of the United States, being a descendant of such alien, could so inherit.

"That it appeared that more than nine years had elapsed from the time descent was cast by the death of Edward Hanrick until the institution of this suit.

"That said plaintiffs' pleadings showed no right in the plaintiff.

"That plaintiffs excepted to the ruling of the court, sustaining said defendant's exceptions, and declining to amend, this cause was dismissed by the court, and plaintiffs gave notice of appeal.

"It is agreed that the points of law essential to the decision of this case are embraced in the following queries:

"1. Did a title to real estate in Texas descend and vest in the alien heirs of a citizen of the United States, who died in 1865, said heirs being unable to claim under any of the provisions of the act of 1854, defining the civil rights of aliens?

"2. If a title did so descend and vest in such alien heirs, can they, being still aliens, and subjects of Great Britain, maintain a suit for the recovery of their interest after nine years have elapsed since descent was cast in 1865?

"Under the assumption as stated next above, what are the respective rights of alien and citizen heirs of such an alien heir on whom descent was cast, and who died before the nine years had elapsed; also, of such heirs when such alien heir died after the nine years had elapsed; and, in this connection, will those of the plaintiffs not shown on face of petition to have been aliens at the time descent was thus cast, be considered as having been citizens of the United States at such times?

"4. If a title did not so descend and· vest in the alien heirs of the said Edward Hanrick, can those plaintiffs not shown on face of petition to have been aliens at the time descent was cast, trace their descent through their alien father, who was then living, and maintain this action?

"BELCHER & RING,
"Attorneys for Appellants.
"E. J. GURLEY and GOODRICH & CLARKSON,
"Attorneys for Appellee Edward G. Hanrick."

I. The first point of law for our decision is:

"Did a title to real estate in Texas descend and vest in the alien heirs of a citizen of the United States, who died in 1865, said heirs being unable to claim under any of the provisions of the act of 1854, defining the civil rights of aliens?"

The determination of this question involves the proper construction of the laws of Texas upon the subject of alienage.

The following extracts embrace all these laws relating directly to this subject:

"No alien shall hold land in Texas, except by title emanating directly from the government of this republic; but if any citizen of this republic shall die intestate or otherwise, his children or heirs shall inherit his estate, and aliens shall have a reasonable time to take possession of and dispose of the same in a manner hereafter to be pointed out by law." Const. of the Republic, sec. 10, General Provisions.

"In pursuance of the above provisions, an act defining what 'a reasonable time' should be, was passed January 28, 1840 (Hart. Dig., art. 585), reënacted (Hart. Dig., art. 600; Pasch. Dig., art. 44) March 18, 1848, in section 9 of an act entitled 'An act to regulate the descent and distribution of intestates' estates.'

"SEC. 9. In making title to land by descent, it shall be no bar to a party, that any ancestor through whom he derives his descent is, or hath been, an alien; and every alien to whom any land may be devised or may descend, shall have nine years to become a citizen of the republic, and take possession of such land; or shall have nine years to sell the same, before it shall be declared to be forfeited, or before it shall escheat to the government. Pasch. Dig., art. 44.

"The following act was passed February 13, 1854: 'An act to define the civil rights of aliens.'

"SEC. 1. Any alien, being a free white person, shall

have and enjoy in the state of Texas such rights as are, or shall be, accorded to American citizens by the laws of the nation to which such alien shall belong, or by treaties of such nation with the United States.

"SEC. 2. Aliens may take and hold any property, real or personal, in this state, by devise or descent, from any alien or citizen, in the same manner in which citizens of the United States may take and hold real or personal estate by devise or descent within the country of such alien.

"SEC. 3. Any alien, being a free white person, who shall become a resident of this state, and shall, in conformity with the naturalization laws of the United States, have declared his intention to become a citizen of the United States, shall have the right to acquire and hold real estate in this state in the same manner as if he were a citizen of the United States.

"SEC. 4. The ninth section of an act, 'An act to regulate the descent and distribution of intestates' estates,' approved March eighteenth, eighteen hundred and forty-eight, is hereby repealed so far as the same may be inconsistent with this act; and this act shall take effect and be in force from and after its passage." Pasch. Dig., art. 45 *et seq.*

It will be seen from the above that the introduction of the common law into Texas in 1840 (Pasch. Dig., art. 970) did not bring with it all the common law disabilities of alienage.

The controlling question in the case is this: Did the above act of 1854 so far repeal section 9, act of 1848, as that appellants, Nicholas Hanrick *et al.*, could not by virtue of it claim title to the lands in controversy, under the agreed case as presented.

The statute of 1854 is an affirmative one, and by long established rules of construction must be considered as additional to the then existing section 9, act of 1848, upon

the same subject matter, and that the latter is not repealed by it, unless this is done in express terms or by necessary implication. Potter's Dwarris on Statutes, 189; 1 Bishop's Cr. Law (4th ed.), §§ 175, 194.

The statute of 1854 does not in express terms repeal section 9, act 1848, for it is affirmatively provided that it is repealed so far as inconsistent with the act of 1854, thus clearly evincing the legislative intent that the latter act would be the rule only in certain cases.

Neither, it is believed, was this section 9 repealed by the statute of 1854 by implication, under old and well established rules of construction governing such cases.

Repeals by implication are not favored, and both statutes will stand, if it be possible to reconcile them.

Justice Wheeler, in Cain v. The State, says: "Even in respect to acts passed at different sessions, although it is clearly settled that statutes may be repealed by implication when their provisions are irreconcilable, 'still (says Sedgwick, p. 127) the leaning of the court is against the doctrine, if it be possible to reconcile the two acts of legislature together.' So, in Pennsylvania, it is declared that one act of assembly is held to repeal another by implication, only in case of very strong repugnancy or irreconcilable inconsistency. . . . This is the well settled doctrine, and the reason of it is said to be, that laws are presumed to be passed with deliberation, and with a full knowledge of all existing ones on the same subject."

The court on the following page in the same case says: "There is no doctrine in relation to the construction of statutes more certainly settled than this, that all acts in relation to the same subject matter are to be taken *in pari materia* and considered as one act." 20 Tex., 360; Neill v. Keese, 5 Tex., 32; Cannon v. Vaughn, 12 Tex., 402; Scoby v. Sweat, 28 Tex., 727; Street v. Commonwealth, 6 Watts & Serg., 209; Bank v. Commonwealth, 10 Barr, 448; Brown v. Com'rs, 21 Penn. St., 42; Com-

monwealth *v.* Herrick, 6 Cush., 468; Williams *v.* Potter, 2 Barb. (S. C.), 316; Potter's Dwarris on Statutes, 189.

That learned commentator, Mr. Bishop, says: "But repeals by implication . . . are not favored. Therefore statutes in derogation of the common law, or of a previous express enactment, are to be construed strictly, not operating beyond their words or the clear repugnance of their provisions; that is, the new displaces the old, only as directly and irreconcilably opposed in terms. For when the legislative power professes to add a provision, as it does in the enactment of an affirmative statute, we cannot presume for it an intention also to subtract a provision, while there is any well known rule of interpretation, which, applied to the one or to both, will enable both to stand." Bishop's Cr. Law (4th ed.), § 197.

We are of opinion that the act of 1854 is not so "directly and irreconcilably" opposed to section 9, act of 1848, as that the latter is repealed by implication.

"The object and only object of judicial investigation in regard to the construction of doubtful provisions of statute law, is to ascertain the intention of the legislature which framed the statute." Cain *v.* The State, 20 Tex., 362, quoting from Sedgwick on Stat. and Const. Law, 231.

In ascertaining this intention, it is a familiar doctrine that we should look to the circumstances under which the statutes were passed.

The laws of Texas upon the subject of alienage had their origin in the dark days of her revolution. Unable within herself to resist the despotism of Mexico, her only hope was in the procurement of foreign aid and assistance. As one inducement to obtain this, she incorporated into her organic law that the alien children and heirs of those who should become citizens, and thereby aid in her struggle for existence, should have a reasonable time within which to avail themselves of estates which ordinarily would have escheated to the government.

That wise policy which then induced immigration and consequent material aid and comfort, was, subsequent to the achievement of her independence, continued, and still continues, for the purpose of the settlement and development of her vast domain.

In pursuance of this policy, and to meet in a proper spirit the modern, liberal international legislation upon the subject of alienage, the act of 1854 was passed, not, it is believed, in a spirit of retaliation, and to withdraw from citizens of those countries which may not have passed such reciprocal laws as contemplated by that act, the benefits of our previous legislation, but simply to make our legislation conform in the particular case with that of those countries which may also have legislated upon the subject. The act of 1854 did not in terms limit the rights of aliens generally, which previously had been granted by section 9, act of 1848, by restricting them to such rights, *and those only,* as were or might be granted to citizens of the United States by their government.

On the contrary, it was an affirmative and enlarging statute, and intended to give to aliens such rights and privileges, in addition to those granted by section 9, act of 1848, as had been or should be given by their government to citizens of the United States.

When, therefore, the government of the United Kingdom of Great Britain and Ireland passed the act of 1870, referred to in the agreement of counsel, then, so far as it extended benefits to citizens of the United States, it was, by virtue of the provisions of our statute of 1854, immediately engrafted upon it, and became the law defining the rights of alien citizens of Great Britain and Ireland to real estate in Texas; and section 9, act of 1848, was, as to such aliens, so far modified as to change their previous defeasible estate thereby given into an indefeasible estate. As highly persuasive that this is the proper construction of these two statutes, the five distinguished lawyers who

composed the commission which prepared our present Revised Statutes, on page 14 of their report to the legislature which received and adopted their work, say that no change had been made in the law relating to aliens.

The act on this subject thus reported by the commission to the legislature, as declaratory of the then existing law, and the adoption of which, in connection with the report, may be considered in the light of a similar legislative construction, or at least as an expression of the policy of Texas upon this subject, reads:

"In making title to land by descent, it shall be no bar to a party that any ancestor through whom he derives his descent from the intestate is, or hath been, an alien; and every alien to whom any land may be devised or may descend, shall have nine years to become a citizen of the state and take-possession of such land, or shall have nine years to sell the same, before it shall be declared forfeited or shall escheat to the government; *provided*, that the treaties of the United States with the nation to which such alien may belong do not otherwise direct; *and provided further*, that aliens may take and hold any property, real or personal, in this state, by devise or descent from any alien or citizen, in the same manner in which citizens of the United States may take and hold real or personal estate by devise or descent within the country of such alien." Revised Statutes, art. 1658. Additional articles reported by commissions on this subject and adopted by the legislature. Revised Statutes, arts. 9, 10.

We are of opinion, therefore, that the statute of 1854, neither by its express terms nor by a proper construction of its provisions and intention, did so repeal section 9, act of 1848, as to prevent, if they are otherwise entitled, the alien heirs of Edward Hanrick from deriving title by descent under it to real estate in Texas.

II. The second point of law submitted for our decision is:

"If a title did so descend and vest in such alien heirs, can they, being still aliens, and subjects of Great Britain, maintain a suit for the recovery of their interests after nine years have elapsed since descent was cast in 1865?"

Notwithstanding the tendency of the earlier decisions of this court to the contrary, under its more recent decisions, and those of the supreme court of the United States, the effect of the provision of the constitution of the republic and the statutes of 1840 and 1848 upon the subject of alienage, before quoted, was to vest a defeasible title to real estate in Texas, into the alien children and heirs of a citizen of the United States who may have died intestate, leaving such property; which title was valid, both against individuals and also the state, not only for the period of nine years, but for such further time, until the state by some proper proceedings in the nature of *office found*, had declared a forfeiture. Sabriego *v.* White, 30 Tex., 576; Settegast *v.* Schrimpf, 35 Tex., 323; Andrews *v.* Spear, 48 Tex., 567; Osterman *v.* Baldwin, 6 Wall., 116; Airhart *v.* Massieu, 8 Otto, 491; Phillips *v.* Moore, 10 Otto, 208.

No proceeding has been taken in this case to declare the land forfeited. From the date of the death of Edward Hanrick, in 1865, to the passage of the above act of the parliament of the United Kingdom of Great Britain and Ireland in 1870, nine years had not elapsed.

Immediately upon the passage of this act, the defeasible title in the alien heirs of Edward Hanrick was, by the provisions of the act of 1854, changed into an indefeasible title; the same vesting into his heirs according to our statute of descent and distribution in force at the time of descent cast.

That such is the proper construction is evident from the former decisions of this court upon a kindred question.

In Cryer *v.* Andrews, 11 Tex., 170, it is decided that this period of nine years, having been given by special

law, was not restricted by the general statute of limitations; and further, that as the nine years had not elapsed at the date of the annexation of Texas to the United States, which removed the bar of alienage, that the former defeasible title of Mrs. Cryer, she having been a citizen of Arkansas, was thereby made indefeasible.

To the same effect are the cases of Wardrup v. Jones, 23 Tex., 489; Lee v. King, 21 Tex., 582; Osterman v. Baldwin, 6 Wall., 116.

III and IV. The decision of the first and second points of law involved virtually disposes of the third and fourth.

In regard to the fourth point, it may be added that section 9, act of 1848, by its express terms, contemplates that in a proper case descent may be derived through a living alien ancestor. It reads:

"SEC. 9. In making title to land by descent, it shall be no bar to a party that any ancestor through whom he derives his descent is, or hath been, an alien."

The word ancestor, though ordinarily used to designate a deceased person, does not necessarily imply this. It may refer to one living.

It is evident that the legislature either used it in the latter sense, or that, in view of alienage, the person through whom the title was derived was considered as *civiliter mortuus.*

Under a statute of Virginia almost literally the same, it has been expressly decided that descent may be cast upon a citizen through a living alien ancestor. 1 R. C. of Va., ch. 9, § 18, p. 357; Jacksons v. Saunders, 2 Leigh, 109.

The judgment below sustaining the demurrer to plaintiffs' petition is reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 14, 1880.]