NICHOLAS HANRICK ET AL. v. E. G. HANRICK ET AL.

(Case No. 4911.)

1. ALIEN HEIRS.— An alien could inherit land in Texas under the constitution of the republic and the act of 1840.
2. SAME — STATUTE CONSTRUED.— Section 14 of the act of 1840, as re-enacted in 1848, is part of an act regulating descent and distribution, and when considered with reference to the context, it follows by necessary construction that aliens are embraced in the terms "kindred," "children," "descendants," "heirs," and other like expressions, and that section is in the nature of a limitation upon the rights of aliens in that respect.
3. SAME.— Since the act of 1840, regulating descent and distribution, was not repealed by the adoption of the constitution of 1845, but continued in force until re-enacted and modified by the act of 1848. the common law rule inhibiting an alien from taking by descent was never in force in Texas.
4. SAME.— In the absence of a constitutional inhibition against its exercise, the congress of the republic of Texas, and afterwards the legislature of the state, had power to confer on aliens the right to inherit land; and the fact that one constitution conferring the right was superseded by another which was silent on the subject, did not operate a repeal of existing legislation in reference to it.
5. SAME.— Until the passage of the act of 1854, alien heirs could take a defeasible title to real estate in Texas from citizen relatives dying intestate. White v. Sabariego, 23 Tex., 245–247, contains nothing in conflict with this.
6. SAME.— From 1836 to 1854 the uniform policy in Texas was to permit aliens to take a defeasible title to land by descent. subject to forfeiture by the government should they fail to take possession within the time prescribed; and this without reference to the law of the government of which they were citizens or subjects.
7. SAME.— The ninth section of the act of March 18, 1848, is as follows: "Sec. 9. In making title to land by descent it shall be no bar to a party that any ancestor, through whom he derives his descent from the intestate, is or hath been an alien; and every alien to whom any land may be devised or may descend shall have nine years to become a citizen of the republic and take possession of such land: or shall have nine years to sell the same, before it shall be declared to be forfeited, or before it shall escheat to the government."

By the act of February 13, 1854, it was provided as follows: "Sec. 1. Any alien, being a free white person, shall have and enjoy in the state of Texas such rights as are, or shall be, accorded to American citizens by the laws of the nation to which such alien shall belong, or by the treaties of such nation with the United States.

"Sec. 2. Aliens may take and hold property, real or personal, in this state, by devise or descent, from any alien or citizen, in the same manner in which citizens of the United States may take and hold real or personal estate by devise or descent within the country of such alien."

". . . Sec. 4. The ninth section of 'An act entitled an act to regulate the descent and distribution of intestates' estates,' approved March 18, 1848, is hereby repealed. so far as the same may be inconsistent with this act, and this act shall take effect and be in force from and after its passage." *Held:*

(1) The act of 1854 must be construed as enlarging rather than restricting

the right of aliens to take and hold land in Texas, being cumulative in its operation.

(2) Under it, as before its enactment, an alien could take a defeasible title by inheritance to Texas land without regard to the laws on that subject in force in his own country; but when by the laws of his own government an alien is permitted to take an indefeasible title by inheritance, he can take by inheritance a like estate in Texas.

(3) When at the time of the ancestor's death the government of his alien heir did not permit a citizen of the United States to inherit an estate in fee simple, but before the expiration of nine years accorded that right, the defeasible title to Texas land inherited by the alien heir was, upon the enactment of the law granting the right of inheritance by the foreign government, converted into an indefeasible title.

APPEAL from Falls.   Tried below before the Hon. L. C. Alexander, special judge.

Appellants, the children and grandchildren of James Hanrick, deceased, brought this suit against appellees to recover an undivided interest in and to secure partition of the land described in the petition.

Appellants, except Nicholas Hanrick, were and are aliens — subjects of Great Britain.   James Hanrick, their ancestor, was also an alien, and died such in 1875.   John Hanrick, brother to James, through whom they also claim in part, was an alien, and died as such in 1871.   Edward Hanrick, from whom both parties claim, was a citizen of Alabama, and died intestate without children or their descendants in 1865.

E. G. Hanrick, the nephew of Edward, at the time of the latter's death, was a citizen of the United States.   He is the son of Phillip Hanrick, who died before his brother Edward.   Appellee claimed an interest in the land.   So appellees, Branch and Seargant, claimed an interest through Mrs. O'Brien, a sister of Edward Hanrick.

A demurrer was sustained to the petition on the ground that appellants were aliens and could not take by inheritance at the time of the death of Edward Hanrick in 1865.

The ruling of the court sustaining the exception to the petition was assigned as error.

This case was before the supreme court in 1880 upon the same questions, and was then reversed and remanded.   See Hanrick v. Hanrick, 54 Tex., 101.

W. C. Belcher and H. F. Ring, for appellants, cited: Hanrick v. Hanrick, 54 Tex., 101; Burns v. Ledbetter, 56 Tex., 283; Wells on Stare Decisis and Res Adjudicata, ch. XLIV, p. 569, subject: "The Law of the Case."

*Goodrich & Clarkson*, for appellees, on the proposition that an alien could not inherit from an alien who claimed by inheritance through an alien, cited: Pasch. Dig., arts. 45 to 48; id., art. 3423; Sabariego *v.* White, 23 Tex., 245; McKinney *v.* Saviego, 18 How., 235; Crane *v.* Reeder, 4 Am. Rep., 430; Hauenstein *v.* Lynham, 10 Otto, 483; Edgar *v.* Galveston City Co., 46 Tex., 427; Hill *v.* Allison, 51 Tex., 392; Rainey *v.* Chambers, 56 Tex., 17; Clegg *v.* Varnell, 18 Tex., 301; Frost *v.* Frost, 45 Tex., 341; Lee *v.* Salinas, 15 Tex., 495; 8 Tex., 448.

That Hanrick *v.* Hanrick, 54 Tex., 101, was not binding as authority, they cited: Burns *v.* Ledbetter, 56 Tex., 283; White *et al. v.* Downs, 40 Tex., 225, and cases there cited; Hole *v.* Rittenhouse, 25 Pa. St., 500 *et seq.*

WATTS, J. COM. APP.— By the constitution of the republic it was provided that "No alien shall hold land in Texas except by titles emanating directly from the government of this republic. But if any citizen of this republic should die intestate or otherwise, his children or heirs shall inherit his estate, and aliens shall have a reasonable time to take possession of and dispose of the same, in a manner hereafter to be pointed out by law."

In 1840, by virtue of that provision, the congress of the republic enacted the fourteenth section of "An act to regulate the descent and distribution of intestates' estates," which is in the following language: "In making title by descent, it shall be no bar to a party that any ancestor, through whom he derives his descent from the intestate, is or hath been an alien; and every alien to whom any land may be devised or may descend shall have nine years to become a citizen of the republic and take possession of such land; or shall have nine years to sell the same, before it shall be declared to be forfeited, or before it shall escheat to the government."

However, in the constitution of 1845, which took effect upon annexation, there was no provision with reference to aliens. But the legislature, on March 18, 1848, passed an act entitled "An act to regulate the descent and distribution of intestates' estates," in which the fourteenth section of the act of 1840, quoted above, was re-enacted.

From thence until the passage of the act of February 13, 1854, entitled "An act to define the civil rights of aliens," no change was made in the statutes upon that subject. The latter act is as follows:

"Sec. 1. Any alien, being a free white person, shall have and enjoy in the state of Texas such rights as are, or shall be, accorded

to American citizens by the laws of the nation to which such alien shall belong, or by treaties of such nation with the United States.

"Sec. 2. Aliens may take and hold any property, real or personal, in this state, by devise or descent, from any alien, or citizen, in the same manner in which citizens of the United States may take and hold real or personal estate by devise or descent within the country of such alien.

"Sec. 3. Any alien, being a free white person, who shall become a resident of this state, and shall, in conformity with the naturalization laws of the United States, have declared his intention to become a citizen of the United States, shall have the right to acquire and hold real estate in this state in the same manner as if he were a citizen of the United States.

"Sec. 4. The ninth section of an act, 'An act to regulate the descent and distribution of intestates' estates,' approved March 18, 1848, is hereby repealed so far as the same may be inconsistent with this act; and this act shall take effect and be in force from and after its passage." Pasch. Dig., art. 45 *et seq.*

So far as may be necessary to a consideration of the real question involved, the following statement sufficiently shows the case made by the pleadings of appellants:

Edward Hanrick, a native of Ireland and naturalized citizen of the United States, and residing in the state of Alabama, died in 1865 seized in fee of the land in controversy, intestate, unmarried and without issue.

The appellee, E. G. Hanrick, one of the defendants below, was born and raised in the state of Alabama, where his father, Phillip Hanrick, a brother of said Edward, died intestate in 1852.

Upon the death of said Edward Hanrick the said E. G. Hanrick claimed and is claiming as sole heir at law of his deceased uncle. Beside the appellant, the said deceased, Edward Hanrick, left surviving him two brothers, James Hanrick and John Hanrick, and one sister, Elizabeth O'Brien, a widow, all British subjects, and residing in Ireland.

John Hanrick died in 1871, intestate, unmarried and without issue, never having been in the United States.

James Hanrick died in 1875, intestate, and left surviving him his children and grandchildren, who are the plaintiffs in this suit, the said James never having been in the United States.

The sister, Elizabeth O'Brien, still survives and continues to reside in Ireland.

Nicholas Hanrick, one of the plaintiffs, emigrated to the United States in 1852, and has since that time resided in New York.

May 12, 1870, the British parliament passed an act known as the "Naturalization Act of 1870," which in substance provided that aliens should have all the rights of British subjects, in regard to the acquisition, taking, holding, transmitting and disposing of real and personal property, situated in said kingdom, but expressly declared that this act shall not affect estates or rights vested before the passing of said act.

Before the passing of said act the rule of the common law prevailed in said kingdom, which denied aliens the right to inherit property situated in said kingdom.

Upon the trial in the court below an exception was sustained to the petition on the ground that appellants were aliens and could not inherit from Edward Hanrick at the time of his death. And if they could take as heirs at the time of his death, it was only a defeasible estate, to which they asserted no right to the land during the nine years allowed by statute.

These identical questions were adjudicated by the supreme court on the former appeal, but appellees insist that the former decision is erroneous, and the court is requested to again examine the questions in the light of reason and authority, without being influenced by the rule of *stare decisis*.

Where a former decision in the same case has not become a rule of property, or where the case was not remanded with directions to the court below to proceed in some particular way, our supreme court has re-examined the ground of the former decision, and in some instances has reversed the holding on the former appeal. Reeves *v.* Petty, 44 Tex., 252.

In sustaining the exceptions to the petition, the distinguished attorney there, acting as special judge, ignored the decision of the supreme court on the former appeal, wherein it was directly determined that the appellants and those through whom they claim did take by inheritance a defeasible estate at the death of Edward Hanrick, which became indefeasible by the passage of the act of 1870 by the British parliament.

The first question involved is this: Could an alien heir inherit land in this state from an ancestor who was a citizen of Texas, under and by virtue of the ninth section of the act of 1848? This section, as has been seen, was but the re-enactment of section 14 of the act of 1840, which was enacted at the same session of congress

that the common law of England was adopted as the rule of decision in the republic. It is not pretended but that an alien heir could take by inheritance under the constitution of the republic and the act of 1840, but it is claimed that this right of an alien to take by inheritance was swept away by the adoption of the constitution of 1845, which did not contain any provision conferring such right. By act of January 16, 1840, it was enacted " that whenever one law which shall have repealed another shall itself be repealed, the former law shall not be revived without express words to that effect." Hartley's Digest, art. 2348. That provision has, ever since its passage, continued and is now in force in this state. Pasch. Dig., art. 4577; R. S., art. 3127.

The doctrine seems to be well established that where a statute comprehends the entire subject, and creates a new and independent system respecting the subject matter, it repeals all previous systems and laws respecting the same subject matter. Bryan v. Sundberg, 5 Tex., 424, and authorities cited.

It is also settled that there is no distinction between express and implied repeals as to reviving the former law. Stirman v. State, 21 Tex., 736.

While the principle of the common law which inhibited aliens from maintaining suits for the recovery of real property was adopted in 1840, the other principle of the common law, that an alien could not take real property by grant directly from the government or by inheritance from a citizen relative, was not, nor could it have been, adopted while the constitution of the republic was in force.

Then, if it should be admitted that the constitution and laws of the republic, which conferred the right upon alien heirs to take by inheritance a defeasible title to real property, was repealed by implication by the adoption of the constitution of 1845, the very interesting question would arise, as to whether the common law rule, inhibiting alien heirs from taking by descent, then came into operation; if so, when, how, and by what means?

The language of the act of 1840 is, " That the common law of England (so far as it is not inconsistent with the constitution or acts of congress *now in force*) shall, together with such acts, be the rule of decision in this republic."

According to the view entertained of the case, it does not become necessary to determine the questions suggested. For, conceding that by the adoption of the constitution of 1845 that of the republic was entirely abrogated, still there is nothing in the former that would

either expressly or impliedly work a repeal of section 14 of the act of 1840; it is *silent* as to the rights of aliens.

But it is here claimed that section 14, as re-enacted in 1848, standing alone, and unaided by any other enactments, is not sufficient to confer upon alien heirs the right to take real property by descent. It is a part of an act regulating descent and distribution, and, when considered with reference to the context, it follows by necessary implication, or rather construction, that aliens are embraced by intention in the terms "kindred," "children," "descendants," "heirs," and other like expressions used throughout that act, and that the section under consideration is in the nature of a limitation upon the rights of aliens in this respect.

As this act regulating descents and distribution was not repealed by the adoption of the constitution of 1845, but continued in force and was the law in this state until re-enacted with certain changes in 1848, it may be safely assumed that the common law rule insisted upon by the appellees in support of the judgment was never in force here.

No one will insist that, in the absence of any constitutional provision whatever, the congress of the republic or the legislature of the state did not have the power to confer upon aliens such rights respecting real property. And the fact that the constitutional provision conferring the same right was abrogated by the adoption of another, which contained no provision upon the subject, and in which there was nothing, either expressly or impliedly, inhibiting such legislation, would not work a repeal of the then existing legislation upon the subject.

Again, if there was doubt as to the true meaning and intention of the act of descents and distributions, that doubt would be dissipated by reference to the constitutional provision that was in force at the time of the enactment. Such abrogated provision could not, as a matter of course, be referred to as the authority continuing in force, or conferring the power upon which the enactment must be founded; but in explanation of terms used in the enactment, so as to arrive at and determine the legislative interest, as it was therein sought to be expressed, not only the constitutional provision, but all statutes then existing which had any reference to the subject, could be considered in arriving at such legislative intent.

At the time of the enactment in 1848 the only limitations or conditions imposed upon alien heirs taking by inheritance were those imposed by the fourteenth section of the act of 1840, and these

were literally re-enacted in 1848. This latter act prescribed the rules of descent, both as to real and personal property, designating the persons to whom the property of deceased persons, dying intestate, should pass, and the respective interests that the several heirs should take, under the various conditions named in the act. Hence, from the language of the particular section which is here being construed, it appears that the legislature assumed that aliens did have the right to take by descent.

Any other construction would place the legislature in the position of doing a meaningless thing. Why prescribe limitations for aliens who inherit lands in this state, if the right to thus inherit did not then exist? Certainly the legislature would not prescribe limitations in the exercise of a right, where there was no foundation in law for the existence of such a right.

Evidently, until the passage of the act of 1854, alien heirs could and did take a defeasible title to real estate in this state, of citizen relatives dying intestate. It has been so held by the supreme court in more than one case. Hanrick v. Hanrick, 54 Tex., 113, and authorities there cited. See, also, Airhart v. Massieu, 8 Otto, 493.

There is nothing in the case of White v. Sabariego, 23 Tex., 245–247, that militates in the slightest degree against this position. There the plaintiffs brought suit in trespass to try title for the recovery of land, simply alleging that they were the legal and equitable owners of the land, and were at the time of bringing the suit aliens and citizens of the republic of Mexico. In that case Chief Justice Wheeler says: " The naked question is presented whether an alien non-resident can maintain, in the courts of this state, an action of trespass to try title." The court then enumerates the exceptions to the general rule, that an alien cannot maintain an action to recover land, and say that, as the parties show themselves to be aliens, it was incumbent upon them to have alleged such facts as would bring them within some of the exceptions. It is then intimated that the title by inheritance, as shown by the statement of facts, would have been sufficient if it had been alleged.

It is insisted, however, that the act of February 13, 1854, created a new and independent system respecting the rights of aliens, and therefore, by express declaration, as well as by necessary implication, repealed all former laws on that subject, and from thence was the sole basis upon which aliens could predicate a claim to lands in this state. The fourth section of the act expressly repeals the ninth section of the act of 1848, so far as it was inconsistent with the act last passed.

In respect to aliens inheriting and holding real estate, the policy here, as in most of the states of the American Union and some of the foreign governments, has been growing more liberal as they advance in material prosperity and progress in the science of government. This is evidenced by the fact that England, the cradle of the harsh rule that aliens could neither own nor inherit lands, has removed all restrictions, taking as true the allegations of the petition.

From 1836 to 1854 the uniform policy here was to allow alien heirs, without regard to what might be the law upon that subject in the country where they lived, to inherit lands. That is, to take a defeasible title in land by descent, subject to be forfeited to the government if they failed to come and take possession of or convey the same within the time prescribed.

It is stated in Wait's Actions and Defenses, vol. 6, p. 463, that the common law doctrine upon the subject prevails in very few, if any, of the American states, and that all restrictions upon aliens inheriting or otherwise acquiring land have been abrogated in many of them.

That the legislature did not intend to repeal the whole of section 9, we think reasonably clear from the language contained in the repealing clause. Upon the one hand it is claimed that the repealing clause should be given its fullest operation; that the court ought to seek for, anticipate and expect a conflict between the repealing act and section 9. On the other, that the two should be construed together, with a view to harmonize the provisions as far as this can be reasonably accomplished, so as to confine the repealing clause to those provisions that are necessarily in conflict.

If the legislature had intended to adopt an entirely new and exclusive policy, abrogating that which had prevailed from the organization of the republic, it seems that we might well anticipate that such intent would be expressed in plain and unmistakable terms. How very appropriately that intent might have been expressed by simply adding to the second section, "and in no other manner," or other equivalent expression.

But there is no such expression used in the act as would necessarily imply that the intention was to make it exclusive and restrictive; the true intent must be deduced by construing the two together, keeping in mind the fact that the legislature did intend to repeal some portion of the ninth section of the act of 1848.

Considering the act of 1854 as furnishing the only basis upon which an alien heir could predicate a claim to land, that is, consider-

ing it as restrictive or exclusive in character, then it will be readily seen that the repeal operates upon all that portion of the section which reads as follows: " And every alien to whom any land may be devised or may descend shall have nine years to become a citizen of the state and take possession of such land, or shall have nine years to sell the same, before it shall be declared to be forfeited, or before it shall escheat to the government." And it would so far operate upon the first clause of the section as to make it effective only when the same rule prevailed in the foreign country. For the alien heir could only take here in the *same manner* as an alien heir could take by the foreign law. By that construction the rule of descent in such cases would depend entirely upon the foreign law.

If, however, the act of 1854 is construed as an enlarging statute embodying the progressive and liberalizing spirit of the age, the repealing clause would be confined in its operation to the nine years' restriction or limitation, in cases where there was no such restriction or limitation in the reciprocity laws of the alien's government. That is, the right conferred upon alien heirs generally to take by descent a defeasible title would only be affected by the act of 1854 in those cases when, by the laws of the alien's government, alien heirs could there take an indefeasible title. In such cases the nine years' limitation would be considered as repealed, for it would then be in conflict with the spirit and intent of the act of 1854. .

In our opinion the act of 1854 must be considered as enlarging rather than restricting the right of aliens to take and hold land here. It is cumulative and not restrictive in its operations. After its passage as before, an alien could take a defeasible title by inheritance without regard to the law upon that subject in force in his government, but where by the laws of his government an alien takes an indefeasible title by inheritance, so by virtue of this enactment he can here take and hold " in the same manner.".

. This was the construction and effect given to the act of 1854, and the ninth section of 1848, on the former appeal, and of its correctness we entertain no doubt. As the nine years had not elapsed between the death of Edward Hanrick and the passage of the act of 1870 by the British parliament, no forfeiture could have been declared. Upon its passage the provisions of the act of 1854 were called into active operation, and by their conjoint influence converted the defeasible into an indefeasible title. Hanrick *v.* Hanrick, *supra,* and authorities cited.

Under the common law rule an alien could not take by inheritance; neither could a citizen derive title by descent through an alien

ancestor or relative. The object of the Virginia statute (from which probably section 9 of the act of 1848 was copied) was to remove that difficulty; so that, notwithstanding an alien could not take by descent in that state, nevertheless a citizen heir could derive title through an alien ancestor or relative; though in fact living, he was for the purposes of the descent deemed *civiliter mortuus*. Here the alien ancestor or heir would himself take, and the maxim *nemo est hœres viventis* would apply.

For the purposes of the demurrer the allegations of the petition must be considered as true, and have been so treated in the consideration of the questions in this opinion. If, upon the trial, these allegations are sustained by the evidence, then our statute of descents and distributions would apply.

It follows that upon the death of Edward Hanrick his real estate in Texas vested as follows: One-fourth in E. G. Hanrick, by an indefeasible title; one-fourth in James Hanrick, by defeasible title, but which was rendered indefeasible by operation of law upon the passage of the act of 1870 by the British parliament; one-fourth in John Hanrick, by defeasible title, which was in the same way rendered indefeasible; and one-fourth in Mrs. O'Brien, by defeasible title, which was also rendered indefeasible in the same manner.

Upon the death of John Hanrick, in 1871, his real estate here vested as follows: One-third in his brother, James Hanrick; one-third in his sister, Mrs. O'Brien; and one-third in his nephew, E. G. Hanrick. And upon the death of James Hanrick, in 1875, his real estate here vested in the same manner as if he had been a citizen; that is, in his children and their descendants.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted on the state of case made by the petition, May 30, 1884.]