# HANRICK *v.* PATRICK.

# BRANCH *v.* PATRICK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF TEXAS.

Argued October 28, 29, 1886. — Decided November 29, 1886.

When the statutes of the state in which an action at law in a Federal court
is tried permit a third party to intervene *pro interesse suo*, as in equity,
and on the trial a general verdict is rendered and a general judgment
entered against both the intervenor and the losing party, the intervenor
is not a necessary party to the writ of error to this court, if his interest
is clearly separable and distinct.

Following the decisions of the Supreme Court of Texas, and also agreeing
with them, this court holds that § 9 of the Act of the Legislature of
Texas, of March 18, 1848, so far as it conferred upon aliens a defeasible
estate by inheritance from a citizen, notwithstanding the alienage, is not
repealed by § 4 of the Act of February 13, 1854; and that immediately
after the passage of the British Naturalization Act of 1870, defeasible
titles of British alien heirs to land in Texas became indefeasible.

The grantor in a deed and all the subscribing witnesses being residents in a
foreign country, proof of its execution by proof of the handwriting of
the subscribing witnesses *held* sufficient.

An unnoted erasure in a deed changing the name of the grantee from Eliza-
beth to Eliza may be explained by proof that Elizabeth and Eliza are
identical and the same person.

The general rule in Texas that property purchased during the marriage,
whether the conveyance be to husband or wife, is *prima facie* community
property holds only where the purchase is made with community funds ;
and the presumption may be rebutted by proof that the purchase was
intended for the wife.

When a deed of land in Texas is made to a married woman for a nominal
consideration, the presumption is that it was intended to vest the title in
her as separate property.

The power of attorney through which intervenors claim considered.

A covenant of general warranty in a deed of "all the right, title, and inter-
est" of the grantor in the premises described does not estop him from
asserting a subsequently acquired title thereto.

This was an action of trespass to try the title to real estate
in Texas. There was also a motion to dismiss for want of
jurisdiction. The case is stated in the opinion of the court.

*Mr. W. Hallett Phillips* and *Mr. L. W. Goodrich* for Hanrick, plaintiff in error, cited,— on the motion to dismiss: *Williams* v. *Bank*, 11 Wheat. 414; *Owings* v. *Kincannon*, 7 Pet. 399; *Masterson* v. *Herndon*, 10 Wall. 416; *Hampton* v. *Rouse*, 13 Wall. 187; *Simpson* v. *Greeley*, 20 Wall. 152 — and on the merits: *Orr* v. *Hodgson*, 4 Wheat. 453; *McKinney* v. *Saviego*, 18 How. 235, 239; *Hadden* v. *Collector*, 5 Wall. 107, 111; *United States* v. *Tynen*, 11 Wall. 88; *Daviess* v. *Fairbairn*, 3 How. 636; *State* v. *Stoll*, 17 Wall. 425; *Cook County Bank* v. *United States*, 107 U. S. 445; Sirey, under Art. 11; Aubry & Rau, Cours de Droit Civil; Proudhon, c. 9, § 2, c. 11, § 1; Merlin, Art. *Etranger*, § 1, Nos. 7 & 8; Duranton, 1, pp. 159, 160; Dalloz, Jurisprudence Generale. *Sullivan* v. *Burnett*, 105 U. S. 334; *Fairfax* v. *Hunter*, 7 Cranch, 603; *Blight* v. *Rochester*, 7 Wheat. 535; *Gibson* v. *Lyon*, 115 U. S. 439; *East Alabama Railway* v. *Doe*, 114 U. S. 340; *Harrison* v. *Boring*, 44 Texas, 255; *Smith* v. *Sheely*, 12 Wall. 358; *Comstock* v. *Smith*, 13 Pick. 116; *S. C.* 23 Am. Dec. 670; *Washington* v. *Ogden*, 1 Black, 450; *Miller* v. *Fletcher*, 27 Gratt. 403; *East Line Railroad* v. *Garrett*, 52 Texas, 133; *Rainey* v. *Chambuns*, 56 Texas, 17; *Jones* v. *McMasters*, 20 How. 8; *Lott* v. *Kaiser*, 61 Texas, 665; *Rogan* v. *Williams*, 63 Texas, 123; *Kirk* v. *Navigation Co.*, 49 Texas, 213; *Cooke* v. *Bremond*, 27 Texas, 457; *Veramendi* v. *Hutchins*, 48 Texas, 531; *Cryer* v. *Andrews*, 11 Texas, 170; *Barclay* v. *Cameron*, 25 Texas, 232; *Hardy* v. *De Leon*, 5 Texas, 211; *Osterman* v. *Baldwin*, 6 Wall. 116; *Hauenstein* v. *Lynham*, 100 U. S. 483; *Bryan* v. *Sundbury*, 5 Texas, 418; *State* v. *International Railroad*, 57 Texas, 539; *Crane* v. *Reeder*, 21 Mich. 24; *Jackson* v. *Fitzsimmons*, 10 Wend. 9; *S. C.* 24 Am. Dec. 198; *Venable* v. *Beauchamp*, 3 Dana, 321; *S. C.* 28 Am. Dec. 74.

*Mr. M. F. Morris*, for Sargent, plaintiff in error, cited — on the motion to dismiss: *Cox* v. *United States*, 6 Pet. 172; *Germain* v. *Mason*, 12 Wall. 259; *Masterson* v. *Herndon*, 10 Wall. 416; *Simpson* v. *Greely*, 20 Wall. 152; *O'Dowd* v. *Russell*, 14 Wall. 402; *Feibelman* v. *Packard*, 108 U. S. 14; *Hurt* v. *Hollingsworth*, 100 U. S. 100; *Noonan* v. *Lee*, 2 Black, 499;

*Bein* v. *Heath*, 12 How. 168; *Boyle* v. *Zacharie*, 6 Pet. 648 — and on the merits: *Hanrick* v. *Hanrick*, 54 Texas, 101; *Hanrick* v. *Hanrick*, 61 Texas, 596; *Van Rensselaer* v. *Kearney*, 11 How. 297; *Harrison* v. *Boring*, 44 Texas, 255; *Richardson* v. *Traver*, 112 U. S. 423; *Hitz* v. *Nat. Met. Bank*, 111 U. S. 722; *Cooke* v. *Bremond*, 27 Texas, 457; *Rogan* v. *Williams*, 63 Texas, 123.

*Mr. J. T. Brady* for defendants in error, (*Mr. H. F. Ring* was with him on the brief,) cited — on the motion to dismiss: 20 How. 280; *Simpson* v. *Greely*, 20 Wall. 152; *Masterson* v. *Herndon*, 10 Wall. 416; *Burleson* v. *Henderson*, 4 Texas, 49; *O'Dowd* v. *Russell*, 14 Wall. 402; *Hampton* v. *Rouse*, 13 Wall. 187; *Williams* v. *Bank*, 11 Wheat. 414; *Wilson* v. *Ins. Co.*, 12 Pet. 140 — and on the merits: *Alexander* v. *Gillian*, 39 Texas, 227; *Riley* v. *Jameson*, 3 N. H. 23; *S. C.* 14 Am. Dec. 325; *Hanrick* v. *Hanrick*, 54 Texas, 101; *Hanrick* v. *Hanrick*, 61 Texas, 596; *Hanrick* v. *Hanrick*, 63 Texas, 618; *Pilcher* v. *Kirk*, 55 Texas, 208; *Waring* v. *Crow*, 11 Cal. 366; *Dufont* v. *Wetheman*, 10 Cal. 354; *Holton* v. *Smith*, 7 N. H. 446; *Van Rensselaer* v. *Kearney*, 11 How. 297; *Gilmer* v. *Poindexter*, 10 How. 257; *Bryant* v. *Virginia Coal Co.*, 93 U. S. 326; *Ganier* v. *Cotton*, 49 Texas, 101; *Cordia* v. *Cage*, 44 Texas, 532; *Smith* v. *Strahan*, 16 Texas, 314; *S. C.* 67 Am. Dec. 622; *Dunham* v. *Chatham*, 21 Texas, 231; *S. C.* 73 Am. Dec. 228; *Baker* v. *Baker*, 55 Texas, 577.

*Mr. H. N. Low* also filed a brief for defendants in error in support of the motion to dismiss, citing the following cases not cited by *Mr. Brady*: *Owings* v. *Kincannon*, 7 Pet. 399; *Todd* v. *Daniel*, 16 Pet. 521; *Forgay* v. *Conrad*, 6 How. 201.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Eliza M. O'Brien, since deceased, with Philip O'Brien, her husband, and William Brady, citizens of New York, commenced their action in the Circuit Court of the United States for the Northern District of Texas, against Edward G. Hanrick, a citizen of Texas. It was an action of trespass to try the title to

real estate in the county of Falls, in that State, described generally as three tracts, one known as the Antanacio de La Serda eleven league grant; the second as two parcels granted to Pedro Zarza; and the third a part of the eleven league tract granted to Rafael d'Aguire. The common source of title as between these parties was Edward Hanrick, who died in 1865 in Montgomery County, Alabama, intestate and without issue, never having married. The plaintiffs below claim title as follows: Edward Hanrick left surviving him as his next of kin and only heirs at the time of his death, one sister, Elizabeth O'Brien, two brothers, named respectively John and James Hanrick, and one nephew, Edward G. Hanrick, the defendant, he being the son and only child of Philip Hanrick, who died in 1852, and who was another brother of Edward Hanrick. Elizabeth O'Brien resided in the county of Wexford, Ireland, and is, and always was, an alien to the United States, and a subject of Great Britain. John Hanrick died intestate and without issue, never having married, in the year 1870, in the county of Wexford, Ireland, an alien to the United States, and a subject of Great Britain. The said James Hanrick left surviving him as his next of kin and only heirs, four daughters, named respectively Elizabeth Clare, Catherine O'Neill, Annie, otherwise called Honora, and Ellen Hanrick, and four grandchildren, the children of a deceased daughter, named respectively Mary, Elizabeth, Bridget, and Robert Whelan, and one son, Nicholas Hanrick. These descendants of James Hanrick reside in Ireland, except Nicholas, Annie, otherwise called Honora, and Ellen Hanrick, who reside in the State of New York. By virtue of these facts, and of the laws of Texas and Great Britain, as hereafter shown, it was claimed that Eliza O'Brien in 1878 was seized and possessed of an undivided one third interest in the said estate of Edward Hanrick in the said lands, when it was claimed she conveyed to the plaintiff, Eliza M. O'Brien, her daughter-in-law, for her separate use and benefit, all her interest in the said estate and lands; William Brady, the other plaintiff below, being entitled to one half of the said undivided one third, by virtue of a conveyance from Eliza M. O'Brien and her husband, Philip O'Brien.

The defendant in possession, having pleaded not guilty of the trespass complained of, asserted title in himself, as the sole heir at law of the said Edward Hanrick, deceased, on the ground that he was the only descendant having inheritable blood, according to the laws of Texas.

The suit was begun February 13, 1880, and issue was finally joined on amended pleadings by the filing of an answer by Edward G. Hanrick on April 3, 1883. On the next day, Wharton Branch appeared as an intervenor in the cause, and filed a pleading called an original answer, in which he denies the sufficiency in law of the plaintiff's petition; objects that on its face it is shown that necessary parties have not been joined as plaintiffs; denies all the allegations of the petition; pleads not guilty to the trespasses alleged therein; and then sets up title in himself to an undivided one fourth of three fourths of the estate under a conveyance alleged to have been made to him on the 14th of February, 1878, by Philip O'Brien, as attorney in fact, acting under a power of attorney alleged to have been made on the 16th of May, 1870, by Elizabeth O'Brien and James and John Hanrick. It is alleged that by that power of attorney Philip O'Brien was authorized and empowered to sell and convey their interests in said estate, and in pursuance of which he made the deed under which the intervenor claims title. The consideration of that deed is stated to have been money theretofore paid out, and expenses incurred and legal advice and information furnished and rendered by the defendant to the said Philip O'Brien. The pleading concludes by praying judgment for the defendant against all parties to the suit, establishing his right, title, and interest in the estate; and that the same be set apart to him in severalty; and for costs and general relief.

On the same day John B. Sargent also appeared as intervenor, and filed an original answer on his behalf, similar in form to that of Wharton Branch, and claiming title to an undivided one half of the interest of Elizabeth O'Brien and John and James Hanrick, under a deed made to him conveying that interest on the 14th of February, 1878, by Philip O'Brien, acting as their attorney in fact under the same power

of attorney referred to in the answer of Wharton Branch; and concluding with a prayer for a similar judgment in his own behalf.

Thereupon the plaintiffs in the action filed pleadings styled an answer to the petition for leave to intervene, and plaintiffs' first supplemental petition, in which they asked that the leave to intervene on behalf of Branch and Sargent be denied and their petitions struck from the files; and specifically setting out the grounds on which they claimed that the alleged conveyances made by Philip O'Brien, as attorney in fact, to them respectively, should be held to be null and void. Amongst those grounds were the following: First. Prior to the execution of the deeds under which the intervenors claim title, two of the principals in the power of attorney, James and John Hanrick, had died, thereby revoking the authority. Second. That the execution of the said deeds on the part of said Philip O'Brien had been obtained by the said Branch and the said Sargent by fraudulent representations, and that the same had never in fact been delivered. The plaintiffs' supplemental petition concludes with a prayer that they have and recover of the said Wharton Branch and the said John B. Sargent, as well as the said Edward G. Hanrick, an undivided one third interest in the lands described in their original complaint, and for all other relief, general and special.

The defendant, Edward G. Hanrick, after the filing of these interventions, moved to dismiss the cause, on the ground, among others, that he had no interest in the controversy as between the plaintiffs on the one hand and Branch and Sargent on the other; but all objections to the intervention were overruled or disregarded, and the cause proceeded to trial on the issues as made between the plaintiffs and the defendant, Edward G. Hanrick, and also on those as between the plaintiffs and the said Branch and Sargent. The cause having been submitted to the jury on the 10th of April, 1883, a verdict was returned as follows: "We, the jury, find for the plaintiff;" and thereupon judgment was entered on the verdict as follows: "It is, therefore, ordered and adjudged by the court that the plaintiffs, Eliza M. O'Brien and Philip O'Brien and William

Brady, have and recover of the defendant, Edward G. Hanrick, and of the intervenors, Wharton Branch and John B. Sargent, an undivided one third interest in and to the following-described lands: . . . And it is further ordered that a writ of possession in favor of said plaintiffs issue therefor; and that plaintiffs do have and recover of such intervenors such costs by them incurred by reason of such intervention, and of defendant all costs which were incurred herein, not including any costs incurred by the said intervention, for which let execution respectively issue."

To reverse this judgment, the defendant, Edward G. Hanrick, sued out a writ of error on April 16, 1883, which was docketed in this court on the 16th of August of the same year. To reverse the judgment as against them, the intervenors, Wharton Branch and John B. Sargent, sued out their writ of error separately on September 26, 1884, which was docketed in this court on the 24th of November of the same year. The intervention of Branch and Sargent was permitted in compliance with Article 4788 of the Revised Statutes of Texas, of 1879, which provides that "when a party is sued for lands, the *real owner* or warrantor may make himself, or may be made, a party defendant in the suit, and shall be entitled to make such defence as if he had been the original defendant in the action."

Article 1188 prescribes that "the pleadings of an intervenor shall conform to the requirements of pleadings, on the part of the plaintiff and defendant respectively, so far as they may be applicable."

The defendants in error, the administrator of Eliza M. O'B· ·n, Philip O'Brien, and William Brady, now move to dismiss the writ of error sued out by Hanrick on the ground that the judgment was jointly against him and the intervenors, Branch and Sargent, and that all should have joined in the same writ. The same objection, of course, applies to the writ of error sued out severally by the intervenors, Branch and Sargent. This motion presents the first question for consideration.

We assume, without so deciding, that the proceedings on the

part of the intervenors may be justified under the statutes of Texas. It must also be admitted to be a general rule, well established by the practice and in the decisions of this court, that, when a judgment against defendants is joint, all the parties affected thereby must join in the writ of error, or there must be a summons and severance, or its equivalent. The question here, however, is, whether this judgment, although so in form, is joint in law as against the original defendant and the intervenors. The verdict in favor of the plaintiffs against them, although single, was rendered upon different and altogether distinct issues. The intervenors defended as against the plaintiffs, not on behalf of the original defendant, but altogether in their own interest, claiming title, not only against the plaintiffs, but adverse to that of the defendant. Indeed, the intervenors' title was derived through the plaintiffs, and their claim was under them, and, as between them and the original defendant, their interest was altogether with the plaintiffs and against the defendant. The ground of their right of recovery against the defendant was the very title asserted by the plaintiffs, and their claim could be successfully prosecuted only by establishing the right of the plaintiffs to recover. Their right against the defendant was to recover against him if the plaintiffs recovered, and their right against the plaintiffs was to recover against the defendant only in the event that the plaintiffs first succeeded in recovering against him. The situation as to them is anomalous. The litigation was triangular. The judgment must be regarded as joint only in form, but severable in fact and in law. It is to be read as if it were based upon a finding that the plaintiffs recover as against the defendant for the title asserted against him, and against the intervenors in respect to the title asserted by them against the plaintiffs. The judgment for costs is in fact separated, the costs of the intervention being regarded as costs in a separate suit. In fact there were two suits, one interjected in the other, in which the parties are different, the titles are different, the interests are different, and there could be no joint judgment in both except in mere words. None of the cases cited in support of the motion to dismiss are applicable,

here, because they refer to judgments in common law actions where no such anomaly as is presented in this record could occur.   In equity, where interventions *pro interesse suo* have been permitted to those affected by the proceeding, but not parties to the original controversy, or where the original parties have distinct 'and separable interests, the same general rule as to appeals applies to joint decrees; but it has always been held that, where the decree is final and separate or separable, those not affected by it are not necessary parties to the appeal. *Forgay* v. *Conrad,* 6 How. 201.

The same principle must govern judgments at law rendered in actions according to the forms of procedure prescribed by the statutes of the States in which they are tried where interventions such as the present are permitted, and the same rule must be adopted in reference to them.

The motions to dismiss are, therefore, denied.

The principal question in the original action arises upon the defence that the plaintiffs below were aliens at the time of descent cast by the death of Edward Hanrick, in 1865, and, under the laws of Texas, therefore not capable of acquiring title by inheritance; it being claimed that the defendant, Edward G. Hanrick, a citizen of Texas, was the sole heir at law.

The Constitution of the Republic of Texas — continued in that of the State — contained the following provision, § 10, General Provisions: "No alien shall hold land in Texas, except by titles emanating directly from the Government of this Republic.   But if any citizen of this Republic shall die. intestate or otherwise, his children or heirs shall inherit his estate, and aliens shall have a reasonable time to take possession of and dispose of the same, in a manner hereafter to be pointed out by law."

In pursuance of this provision, an act defining what a reasonable time should be was passed on January 28, 1840; Hartley's Digest, Art. 585, and reënacted March 18, 1848, Paschal's Digest, Art. 44, in § 9 of an act entitled "An Act to regulate the descent and distribution of intestates' estates," as follows: "Section 9.   In making title to land by descent, it shall be no bar to a party that any ancestor through whom he derives

his descent from the intestate is or hath been an alien; and every alien to whom any land may be devised or may descend shall have nine years to become a citizen of the Republic, and take possession of such land, or shall have nine years to sell the same, before it shall be declared to be forfeited, or before it shall escheat to the government."

An act was passed February 13, 1854, Laws Texas, 1853–4, 98, entitled "An Act to define the civil rights of aliens," which is as follows:

"SECTION 1. Be it enacted, etc., that any alien, being a free white person, shall have and enjoy in the State of Texas such rights as are or shall be accorded to American citizens by the laws of the nation to which such alien shall belong, or by treaties of such nation with the United States.

"SEC. 2. That aliens may take and hold any property, real or personal, in this State by devise or descent from any alien or citizen in the same manner in which citizens of the United States may take and hold real or personal estate by devise or descent within the country of such alien.

"SEC. 3. That any alien, being a free white person, who shall become a resident of this State, and shall, in conformity with the naturalization laws of the United States, have declared his intention to become a citizen of the United States, shall have the right to acquire and hold real estate in this State, in the same manner as if he was a citizen of the United States.

"SEC. 4. That the ninth section of an act entitled 'An Act to regulate the descent and distribution of intestates' estates,' approved March eighteenth, eighteen hundred and forty-eight, is hereby repealed so far as the same may be inconsistent with this act; and this act shall take effect and be in force from and after its passage."

This act was in force in 1865, when Edward Hanrick died. At that time the common law was in force in England whereby, as was held by this court in *Orr* v. *Hodgson*, 4 Wheat. 453, an alien might take an estate by the act of the parties, as by purchase, but could not take by the act of the law, as by descent, for want of inheritable blood. "Where a person dies leaving issue who are aliens, the latter are not deemed his

heirs at law, for they have no inheritable blood, and the estate descends to the next of kin who have inheritable blood, in the same manner as if no such alien issue were in existence."

But on the 12th of May, 1870, the British Parliament passed an act entitled "An Act to amend the law relating to the legal condition of aliens and British subjects," styled the Naturalization Act of 1870. By § 2 it prescribed the status of aliens in the United Kingdom as follows: "Real and personal property of every description may be taken, acquired, held, and disposed of by an alien in the same manner in all respects as by a natural-born British subject, and a title to real and personal property of every description may be derived through, from, or in succession to an alien in the same manner in all respects as through, from, or in succession to a natural-born British subject: *Provided*, (1) that this section shall not confer any right on an alien to hold real property situate out of the United Kingdom, and shall not qualify an alien for any office or for any municipal, parliamentary, or other franchise: (2) that this section shall not entitle an alien to any right or privilege as a British subject, except such rights and privileges in respect of property as are hereby expressly given to him: (3) that this section shall not affect any estate or interest in real or personal property to which any person has or may become entitled, either mediately or immediately, in possession or expectancy, in pursuance of any disposition made before the passing of this Act, or in pursuance of any devolution by law on the death of any person dying before the passing of this Act."

It is conceded that if Edward Hanrick, the ancestor, had died after the enactment of this British statute, the plaintiffs below would have been entitled under the Texas statute of 1854 to claim as his heirs at law their proportion and interest in his real estate. It is contended, however, on the part of the defendant, that inasmuch as at the time of the descent cast in 1865 there was no such British statute as that contemplated by the Texas act of 1854, the plaintiffs were under such a disability of alienage at that time that they were cut off from the inheritance, which, becoming at that instant

vested by law in the defendant, Edward G. Hanrick, the sub-
sequent passage of the British statute could not be permitted
by any retroactive effect to divest that interest in favor of the
plaintiffs. On the other hand, it is contended by the plaintiffs
that under the ninth section of the act of March 18, 1848,
which they claim was still in force in 1865, Elizabeth O'Brien,
as sister of Edward Hanrick, although an alien, was entitled
as his heir at law to a defeasible estate as such, which she was
entitled to make indefeasible within nine years after descent
cast by becoming a citizen of the State and taking possession
of the land, with the right to sell the same in the alternative
before it should be declared to be forfeited, or before it should
escheat to the government, and which subsequently became
indefeasible by the operation of the act of 1854, in consequence
of the passage of the British statute of 1870.

This contention on the part of the plaintiffs below is met
again by the defendant with the proposition that § 9 of the
act of March 18, 1848, was repealed by § 4 of the act of
February 13, 1854.

This very question, in another litigation involving the same
title, came up directly for adjudication in the Supreme Court
of Texas in the case of *Hanrick* v. *Hanrick,* 54 Texas, 101.
The following is an extract from the opinion of the court in
that case. "The statute of 1854 is an affirmative one, and by
long established rules of construction must be considered as
additional to the then existing § 9, act of 1848, upon the
same subject-matter, and that the latter is not repealed by it,
unless this is done in express terms or by necessary implica-
tion. Potter's Dwarris on Statutes, 189 ; 1 Bishop Crim. Law,
1st ed., par. 175, 194. [4th ed. §§ 175, 194.] The statute of
1854 does not in express terms repeal § 9, act of 1848,
for it is affirmatively provided that it is repealed so far as in-
consistent with the act of 1854, thus clearly evincing the legis-
lative intent that the latter act would be the rule only in cer-
tain cases. Neither, it is believed, was this § 9 repealed by
the statute of 1854 by implication under old and well estab-
lished rules of construction governing such cases." pp. 108, 109.

The court then proceeds to point out from the history of

the legislation of Texas on the subject the policy of the State, and adds as follows: "In pursuance of this policy, and to meet in a proper spirit the modern liberal international legislation upon the subject of alienage, the act of 1854 was passed, not it is believed in a spirit of retaliation and to withdraw from citizens of those countries which may not have passed such reciprocal laws as contemplated by that act, the benefits of our previous legislation, but simply to make our legislation conform in the particular case with that of those countries which may also have legislated upon the subject. The act of 1854 did not in terms limit the rights of aliens generally which previously had been granted by § 9, act of 1848, by restricting them to such rights, *and those only*, as were or might be granted to citizens of the United States by their government. On the contrary, it was an affirmative and enlarging statute, and intended to give to aliens such rights and privileges, in addition to those granted by § 9, act of 1848, as had been or should be given by their government to citizens of the United States." p. 111.

In conclusion on this point, the court say: "We are of opinion, therefore, that the statute of 1854, neither by its express terms nor by a proper construction of its provisions and intention, did so repeal § 9, act of 1848, as to prevent, if they are otherwise entitled, the alien heirs of Edward Hanrick from deriving title by descent under it to real estate in Texas." p. 112.

The Supreme Court of Texas thereupon proceeded to consider the further question whether, if a title did so descend and vest in such alien heirs, they can, being still aliens and subjects of Great Britain, maintain a suit for the recovery of their interests after nine years have elapsed since descent was cast in 1865. In answer to that question they say: "Notwithstanding the tendency of the earlier decisions of this court to the contrary, under its more recent decisions and those of the Supreme Court of the United States, the effect of the provision of the Constitution of the Republic, and the statutes of 1840 and 1848, upon the subject of alienage, before quoted, was to vest a defeasible title to real estate in Texas into the alien children and heirs of a citizen of the United States who may have died

intestate leaving such property; which title was valid both against individuals and also the State, not only for the period of nine years, but for such further time until the State by some proper proceedings in the nature of *office found* had declared a forfeiture. *Sabriego* v. *White*, 30 Texas, 576; *Settegast* v. *Schrimpf*, 35 Texas, 323; *Andrews* v. *Spear*, 48 Texas, 567; *Osterman* v. *Baldwin*, 6 Wall. 116; *Airhart* v. *Massieu*, 98 U. S. 491; *Phillips* v. *Moore*, 100 U. S. 208. No proceeding has been taken in this case to declare the land forfeited. From the date of the death of Edward Hanrick, in 1865, to the passage of the above act of the Parliament of the United Kingdom of Great Britain and Ireland in 1870, nine years have not elapsed. Immediately upon the passage of this act the defeasible title in the alien heirs of Edward Hanrick was, by the provisions of the act of 1854, changed into an indefeasible title; the same vesting into his heirs according to our statute of descent and distribution in force at the time of descent cast."

This decision of the Supreme Court of Texas is directly in point, and was repeated in the case of *Hanrick* v. *Hanrick*, 61 Texas, 596, and also in the case of *Hanrick* v. *Hanrick*, 63 Texas, 618.

In the case of *Airhart* v. *Massieu*, 98 U. S. 491, some of these provisions of the law of Texas in one aspect were carefully reviewed, and it was there said that " the act of January, 1840, declared that, in making title by descent, it should be no bar to a party that any ancestors through whom he derives his descent from the intestate is or hath been an alien. This law would seem to be the legitimate result of the status of aliens with regard to title to lands in Texas; the prohibition to hold lands being provisional only, not operative unless they failed to become citizens or dispose of their land within nine years; and not even then until regular proceedings should be provided for and should be had to annul the title. The later cases in Texas have fully established this doctrine;" referring to the cases of *Sabriego* v. *White*, 30 Texas, 576; *Settegast* v. *Schrimpf*, 35 Texas, 323; and *Andrews* v. *Spear*, 48 Texas, 567.

Great weight, if not conclusive effect, in our opinion, is to be

given to these decisions of the Supreme Court of Texas upon the question of the construction of the statutes of the State, as affecting titles to real estate within its territory, and upon the authority of those decisions alone we are quite willing to rest the conclusion that the ninth section of the act of 1848, so far as it conferred upon the plaintiffs below a defeasible estate by inheritance from Edward Hanrick, notwithstanding their alienage, is not repealed by the subsequent provisions of the act of 1854. *Middleton* v. *McGrew*, 23 How. 45. We are, however, also of the opinion that the decisions of the Supreme Court of Texas on that point are well sustained by the reasons on which they proceed. It follows, therefore, that the defence put forward by Edward G. Hanrick, as against the plaintiffs, based on the alienage of Elizabeth O'Brien, cannot be sustained.

We proceed, in the next place, to consider and dispose of certain assignments of error predicated on the rulings of the court as to the admission in evidence and effect of a deed produced by the plaintiffs and read to the jury, dated May 11, 1878, purporting to be signed by Eliza O'Brien, to Eliza M. O'Brien, one of the plaintiffs. This deed appears to have been made between Eliza O'Brien, in the county of Wexford, Ireland, as grantor, and Eliza Mercy O'Brien, the wife of Philip O'Brien, as grantee. It is expressed to be in consideration of the sum of one dollar. It grants all the right, title, and interest of the grantor in and to certain tracts of land therein described, which belonged to Edward Hanrick, deceased, including that in controversy. It professes to have been signed, sealed, and delivered in the presence of two witnesses, of whom one was Francis Ruttledge, a justice of the peace of the county of Wexford, who certifies that Elizabeth O'Brien, personally known to him to be the individual described in, and who executed, the deed, personally came before him and acknowledged its execution. Martin O'Brien, the other subscribing witness, makes an affidavit that he knew Eliza O'Brien, the individual described in the document, and that he was present, and saw her sign, seal, and deliver it as her act and deed, which is certified on the deed by the consul of the United States at Dublin. It also appears from the endorsement on

the deed that it has been duly recorded in the various counties in which the land lies.

It is stated in the bill of exceptions that "upon the face of said deed it appeared that wherever the name of the grantor was mentioned in the body of said deed, the name, as originally written, was Elizabeth O'Brien, and that a portion of said name had been scratched or erased so as to read Eliza O'Brien, of which changes no note of explanation or emendation appeared in said deed."

When the deed was offered, the defendant objected to its introduction in evidence for the following reasons: 1st. Because it had been impeached as a forgery by the affidavit of Wharton Branch, one of the intervenors, who filed his affidavit to that effect on the 4th of April, 1883. 2d. Because the deed did not purport to be the deed of Elizabeth O'Brien, nor to vest title in the grantee, Eliza M. O'Brien, to hold as her separate property. 3d. Because of the unexplained changes apparent on the face of the deed. The court overruled the objections, but before the deed was read in evidence to the jury, the plaintiffs offered preliminary proof to the court to prove the execution of the instrument as at common law, and a witness was called and sworn who testified to the court that "the grantor in said deed and the subscribing witnesses all reside in Ireland; that he was acquainted with the handwriting of Francis Ruttledge, one of the subscribing witnesses to said deed, and that he believed the said Francis Ruttledge to have signed the same as subscribing witness thereto." Evidence was also given to the court tending to rebut said statement, and in the further progress of the case before the jury evidence was introduced by the plaintiffs tending to show that Elizabeth O'Brien and Eliza O'Brien were one and the same person. Evidence was also introduced tending to rebut the alleged fact. Plaintiffs then proposed to prove by the deposition of Philip O'Brien that no consideration was paid for said conveyance, and that the same was intended as a gift to his wife, Eliza M. O'Brien. To the admission of this testimony the defendant objected, because the deed, being upon its face a deed for valuable consideration

made to a married woman during coverture, was in law a
deed to the community, and subject to the sole control and
disposition of the husband, and a trust in favor of a separate
right could not at law be engrafted upon it by parol testimony.
These objections were overruled by the court, and the testi-
mony was admitted.

We are of opinion that these rulings of the court were cor-
rect, on the supposition that the plaintiffs were properly put
upon proof of the genuineness of the deed, irrespective of the
certificate from the record.   The proof of execution, by proof
of the handwriting of the subscribing witness, was sufficient.
The objection founded upon the supposed erasures was fully
met by testimony as to the identity between Elizabeth
O'Brien and Eliza O'Brien.  The only erasure appearing, being
a change from one name to the other, was sufficiently ex-
plained by the proof of identity.   At any rate, the presump-
tion was that the erasure was made before the execution of
the deed.  *Little* v. *Herndon*, 10 Wall. 26.   The considera-
tion of the deed being one dollar was merely nominal.  *Hitz*
v. *The National Metropolitan Bank*, 111 U. S. 722.   And
while it appears to be well established law in Texas that
property purchased during the marriage, whether the convey-
ance be to the husband or wife, is *prima facie* community
property, *Higgins* v. *Johnson*, 20 Texas, 389, *S. C.* 70 Am.
Dec. 394, that rule only holds where the purchase is made
with community funds, and this presumption may be rebutted
by proof that the purchase was intended for the wife.  *Dun-
ham* v. *Chatham*, 21 Texas, 241, 244; *S. C.* 73 Am. Dec. 228.
As in this case the consideration was nominal only, and the
deed made to the wife, the presumption is that it was intended
to vest the title in her as separate property.

The remaining questions, which we deem it important to
notice, arise upon the title claimed by the intervenors, Branch
and Sargent.   They are material also in the controversy be-
tween the plaintiff and the original defendant, as the latter
was entitled to defeat the plaintiff's recovery by showing an
outstanding legal title in any other parties.   To sustain this
claim of title, the defendant and the intervenors introduced,

first, a power of attorney, dated May 16, 1870, purporting to be executed by James Hanrick, John Hanrick, and Elizabeth O'Brien to Philip O'Brien. This power of attorney granted power and authority to Philip O'Brien, on behalf of the other parties, to recover their interest in the estate of Edward Hanrick, and for that purpose to do all such acts, and take such proceedings, and use all such lawful ways and means as he should deem necessary to assert and establish their right. It also contained the following clause: "And also for and on behalf and in the names of us, and as our acts and deed, to make, sign, seal, execute, and deliver all such agreements, contracts, leases, conveyances, and assurances, with all usual and reasonable covenants therein, on our part, of all and any part of said messuages, tenements, premises, estate, and effects, as shall be found necessary or expedient."

Professing to act under this power of attorney, Philip O'Brien executed a deed in the names of his principals, on February 1, 1878, to William Jenkins, Jr., in consideration of one dollar and other valuable considerations, conveying all the right, title, and interest of his principals in the real estate belonging to them as heirs of Edward Hanrick. On the same day, William Jenkins, Jr., the grantee in that deed, conveyed the same interest to Eliza M. O'Brien, the wife of Philip O'Brien. On the same day, Eliza M. O'Brien, wife of Philip O'Brien, in her own right, her husband joining in the conveyance, in consideration of one dollar and other valuable considerations, granted to John B. Sargent, one of the intervenors, "one undivided half of all my right, title, and interest in and to the following described lands, situated in the State of Texas, the said land being the same this day conveyed to me by William Jenkins, Jr." This deed contained covenants that the grantor is "lawfully seized of an interest in fee simple of the granted premises aforesaid; that they are free from all encumbrances by me incurred, and that I have good right to sell and convey the same as aforesaid, and that I will, and my heirs, executors, and administrators shall, warrant and defend the same to the said grantee, and to his heirs and assigns forever, against the lawful claims and demands of all persons."

On the 14th of February, 1878, Philip O'Brien, acting for himself and his wife, Eliza M. O'Brien, and for James Hanrick, John Hanrick, and Elizabeth O'Brien, the heirs of Edward Hanrick, deceased, in consideration of one thousand dollars to be paid by John B. Sargent, conveyed to him in fee simple an undivided one half interest in and to all the estate of Edward Hanrick, deceased, to which the grantors were entitled, their interest therein being described as three fourths thereof. This deed contained covenants "that *our said interest* in the property and premises are free and clear of all and every incumbrance, and that we, &c., will warrant and defend the same," &c. A similar deed, on the same date, was made in the name of the same grantors to Wharton Branch, conveying an undivided one fourth interest in and to all the estate of Edward Hanrick, deceased, to which the grantors were entitled. It was also shown that Eliza M. O'Brien, in the years 1877 and 1878, had acquired the title of Nicholas Hanrick, Ellen Hanrick, and Honora Hanrick, children and heirs at law of James Hanrick, a brother of Edward Hanrick. On the 11th of May, 1878, Elizabeth O'Brien, by the name of Eliza O'Brien, executed a deed conveying all her right, title, and interest in the estate of her deceased brother, Edward, to Eliza M. O'Brien, the wife of Philip O'Brien, being the same deed already referred to in a previous part of this opinion. It is conceded that John Hanrick and James Hanrick, brothers of Edward Hanrick, who joined in the power of attorney to Philip O'Brien, dated May 16, 1870, had both died, John Hanrick in 1870, and James Hanrick in 1875, and before Philip O'Brien executed any conveyance of the property as their attorney in fact. As to them and their heirs or assigns, of course, the power of attorney was thereby revoked.

The deed from Philip O'Brien to Branch, dated February 14, 1878, and the deed to Sargent of the same date, were also ineffectual as to Eliza M. O'Brien, his wife, for whom he had no authority to act at all. They were also void as to Elizabeth O'Brien, because the conveyances were not authorized by the power of attorney, even if the latter was not revoked as to her also by the death of her brothers, with whom she had

joined in its execution. Equally unwarranted was the deed from Philip O'Brien to Jenkins, dated February 1, 1878, and the conveyance by Jenkins to Eliza O'Brien of the same date. O'Brien's authority under the power of attorney from his principals was to recover their estate for them, and not to give it away. The intervenors, however, rely upon the operation of the covenant of warranty contained in the deeds to John B. Sargent of February 1, 1878, made by Eliza M. O'Brien, in conjunction with her husband, Philip O'Brien, claiming that it operated to convey her title subsequently acquired under the deed from Eliza O'Brien, her mother-in-law, dated May 11, 1878. The covenant of warranty in the deed to Sargent, however, relates only to the premises granted, which the grantors agree to warrant and defend, and the premises granted are described as "one undivided half of all my right, title, and interest in and to the following described lands," and cannot, therefore, operate as an estoppel preventing the grantors from asserting any subsequently acquired title. The conveyance and the covenants are both confined to the right, title, and interest which Eliza M. O'Brien had at the date of the deed, expressly referred to and described in the deed of February 1, 1878, as the interest conveyed by the deed from Jenkins. There is no recital in the deed to estop her as to the character of her title, or the quantum of interest intended to be conveyed within the rule laid down by this court in *Van Renssalear v. Kearney*, 11 How. 297. In the absence of such recital, a covenant of general warranty, where the estate granted is the present interest and title of the grantor, does not operate as an estoppel to pass a subsequently acquired title.

The rule on that point seems well stated by Mr. Rawle, Covenants for Title, 4th ed., 393, in the following language: "Where the deed, although containing general covenants for title, does not on its face purport to convey an indefeasible estate, but only the right, title, and interest of the grantor, in cases where those covenants are held not to assure a perfect title, but to be limited and restrained by the estate conveyed, the doctrine of estoppel has been considered not to apply; in other words, although the covenants are as a general rule invested with

the highest functions of an estoppel in passing, by mere operation of law, an after acquired estate, yet they will lose that attribute when it appears that the grantor intended to convey no greater estate than he was possessed of." *White* v. *Brocaw*, 14 Ohio St. 339, 343; *Adams* v. *Ross*, 1 Vroom (30 N. J. L.) 505, 509; *Blanchard* v. *Brooks*, 12 Pick. 47; *Brown* v. *Jackson*, 3 Wheat. 449, 452.

In the present case there is no ground for supposing that the parties to the deed had in contemplation anything more than the supposed interest of Eliza M. O'Brien existing at that date as derived under the deed from William Jenkins, Jr., of February 1, 1878. The conclusion is that the covenant of warranty relied upon does not have the effect claimed of enlarging the estate conveyed by including the subsequently acquired title which passed to Eliza M. O'Brien by the deed from Elizabeth O'Brien of May 11, 1878.

This disposes of all questions of substance arising upon the record. We find no error in the proceedings and judgment of the Circuit Court. Its judgment is accordingly

*Affirmed.*