Mr. Justice Shepard
delivered the opinion of the Court:
One who seeks to set aside a deed actually signed by him or her must make satisfactory proof of the charge, else the relief will be denied.
In support of her charge, the complainant testified that at the request of her brother, Thomas A. Mitchell, and at his house about 6 o’clock in the afternoon of February 26, 1892, she signed the deed produced upon the representation that it was a deed to him for some or all of the lots belonging to him in said square. She did not examine the instrument, so as to be able to testify with certainty, what was the description and who was the grantee actually named. After signing she left the instrument on the sideboard in the dining-room and saw it no more. She says that no notary was present, and that she never did acknowledge it to Mr. Terry or to any other person. Terry’s certificate bears date of the same day. Mrs. Lydia Mitchell, widow of Thomas A. Mitchell, and Bell Freeman, his housekeeper, said they were both present when the deed was signed. No notary was present. Mrs. Mitchell left the house for her own home about 9 P. M. She was sick at home for several days. *324 Thomas A. Mitchell was taken suddenly ill on the 3d or 4th of March and died on the 7th. He was in a comatose condition on the 4th and remained so until his death, as testified by the attending physician.
The notary, George E. Terry, was called by the defendant, and said that he took the acknowledgment as shown by his certificate. He could not remember when or where it was taken or any circumstances connected therewith, and had Kept no record of acknowledgments. He said he was in the habit of taking complainant’s acknowledgment to deeds, and usually went to her house for the purpose, though sometimes it was taken in Mr. Mitchell’s office.
The original deed was produced in the court below, and has been sent up for our inspection. It is partly printed, and it is conceded that the written portion is in the handwriting of Thomas A. Mitchell, save as hereinafter mentioned. The grantee’s name, Agnes L. W. Peugh, appears in a different handwriting and in ink of a different color. In the description of the lots the words and figures as follows: “ three (3) ” and “ four (4) ” are in a different hand and ink. It is apparent also that erasures of other words and figures had been made before these were written in the spaces. The learned justice who tried the case below found that these words and figures, as well as the grantee’s name, were in the handwriting of Samuel A. Peugh from comparison of the same with the answer in the record which was written by him. This paper is not before us, but the finding has not been complained of. Like that in the case of Allen v. Withrow, 110 U. S., 126, a circumstance remarked by Mr. Justice Field, who delivered the opinion, “the deed itself shows by its use of the masculine pronoun, in all places where reference to the grantee is made, that the draughtsman never contemplated its execution to a woman.” The consideration recited in this deed also is one dollar. This was a proper and natural consideration to be expressed in a deed by complainant to Thomas A. Mitchell, in which she released to him his own property; but there is no apparent reason why, *325 if it was a conveyance to Mrs. Peugh in consideration of $1,000 actually paid, the same should not have been so expressed.
No testimony was offered on behalf of defendants to account for the apparent alterations in the deed. If these alterations, together with the name of the grantee, were in fact made by Samuel A. Peugh, and before the deed was executed by complainant; no attempt was made to prove the fact. This deed, we think, required 'explanation. A deed will not be excluded when offered in evidence without explanation of interlineations or changes. In an action at law it goes to the jury to be considered by them in connection with the other evidence in the case.
Where the interlineation or erasure is in the same hand and written with the same ink, the presumption, in the absence of any other proof, may well be indulged that it occurred previous to the execution and delivery. Little v. Herndon, 10 Wall., 26; Hanrick v. Patrick, 119 U. S., 156 ; Robinson v. Myers, 67 Pa. St., 9.
But this deed contained two distinct alterations. Evidently the numbers of the lots, expressed in words and figures, that had been originally written, were carefully erased and the new numbers written in their stead. Had these been made by the same hand and with the same ink, the presumption might be indulged that they were made before the execution, but as they were not, we think the circumstance, in connection with the facts proved otherwise, demanded an explanation at the hands of defendants. Robinson v. Myers, supra. The allegation of the answer to. the' effect that, “when the deed was delivered by Mitchell, and the consideration paid, it was precisely in all respects as it appears today,” as well as others to the same effect, is not sufficient. Grant that the deed was fraudulently altered by Thomas A. Mitchell, after its delivery to him, and before he delivered it to Mrs. Peugh, and that she took it in good faith, this, though inconsistent with the fact that the alterations were in the handwriting of Peugh, does not meet the charge and *326 proof of complainant that the deed; had been altered after she executed it to Mitchell for himself and not for Mrs. Peugh. If a deed be fraudulently altered after delivery, it is void, and an innocent purchaser can take nothing under it. Wallace v. Harmstad, 15 Pa. St., 462.
There are other facts and circumstances in the case which, unexplained, tend not only to corroborate complainant’s evidence as to the fraudulent alteration of the deed, but also to show that Samuel A. Peugh was a party thereto. In the answer, as we have seen, it is alleged that Mrs. Peugh gave Thomas A. Mitchell two “ Barbadoes ” notes of $500 each for the two lots in order to assist him at a time when he needed it badly. This deed, it will be remembered, was made February 26. Complainant testified that after her brother’s death and after she had been informed that Peugh claimed to have purchased the lots, he called to see her and told her that he had bought the lots. In this conversation he said that she would find a note or due bill in her brother’s pocket-book that was given in part payment. Complainant searched the pocket-book, and the only note or due bill she found was the following: “ Due Thomas A. Mitchell one $500 Barbadoes note on demand. Washington, D. C., March 2, 1892.” Signed, “ S. A. Peugh.” From this it will be seen that Mitchell, whose necessities were so great only four days before as to cause him to convey the two lots to Peugh’s wife for two $500 Barbadoes notes, which lots, too, he was so reluctant to sell as to ask them to keep the deed from record to enable him to buy them back at an advance of $100 per lot, was now lending one of the same notes back to Peugh apparently without security. In order to explain this transaction Peugh made the following statement in his answer: “Plaintiff has filed as an exhibit in her testimony a paper signed by respondent for a $500 Barbadoes note apparently as'due by me. She is not entitled to the paper, nor does it show the true facts of the case.
“ The paper was given under these circumstances: Mitchell, who had many pecuniary transactions with Messrs. Woods *327 & Co., bankers (and whom respondent did not even know), obtained my note to them for $500, dated January 13, 1892, at 90 days, to relieve (as he said) some securities held by them. For this note they gave him the money. To secure respondent for this note Mitchell gave him a $500 Barbadoes note, to be returned to him when he (Mitchell) should have paid my said note to Woods & Co.
“A short time prior to his last illness he came to my office late in the evening, and asked me for a statement about this particular note, so that when he should have paid my said note to Woods & Co., there would be due him this Bar-badoes note. Hurriedly and without proper thought I gave him the said paper, inadvertently omitting to state it to be due him when he paid my note of $500 given to Woods & Co.
“Recollecting my omission when he had gone, the next day I went to his house to have it corrected, but he was much indisposed and too ill to see me. Shortly after and in a few days he died. At that time Mitchell was indebted to respondent, as trustee, in several sums of money, viz., to pay Mr. Lang for preparing his subdivision of Barbadoes and other expenses in relation to this subdivision into streets and lots to place the sale of them on the market; also $1,600 ■on a mortgage on a tract of land in Maryland, which he had engaged to liquidate ‘ on or before the 1st of January, 1892/ but which he failed to do, besides other obligations in my possession, making, with the Woods & Co. note of $500, about $2,800, which, when it fell due, respondent had to liquidate, and is made an exhibit herewith.”
“Ex. A.
“ $500.00. Washington, D. C., Jan. 13th, 1892.
“Three months after date I promise to pay to order of Woods & Company the sum of five hundred dollars, for value received, with interest thereon until paid at the rate of 6 per cent, per annum.
“ No. —. Due —. S. E. Peugh,
“215 B st. N. W.”
*328 (Written on margin:) “ Secured by deed of trust on —, —, trustees.”
(Written across the face in red ink:) “Woods & Co., Bankers, Paid. Washington, D. C.”
(Written across the face:) “P. H. Christman.”
In the light of the uncontroverted evidence of Philip H. Christman, this answer affords strong evidence of this defendant’s participation in the scheme to defraud the complainant through the fraudulent alteration of the deed. Christman said that Thomas A. Mitchell came to him with the note and proposed if he would indorse it, to turn over to him a “ Barbadoes ” note as collateral. Mitchell turned over to Christman a $1,000 “ Barbadoes ” note, who then indorsed the Peugh note, and Woods & Co. discounted it. This was January 13, 1892. Christman said also that he did not know why Peugh gave the note, but was “ almost confident that he (Peugh) got the benefit of this money, because he afterwards just as much as told me so.” He said further that when the note became due Peugh paid $100 and interest. When due again it was renewed for fifteen or thirty days. When due the third time Woods & Co. demanded payment, and witness paid them $400 and interest. The note attached as an exhibit to Peugh’s answer is the original note that was surrendered upon the first renewal. Peugh has never paid the $400 and witness does not hold him responsible therefor; on the contrary, he expects to refund Peugh the $100 and interest out of the $1,000 Barbadoes collateral note when collected.
It appears from this testimony that this loan was probably for Peugh’s own benefit instead of Mitchell’s. Whether this be true or not, it nevertheless appears that Peugh attempted deliberately to deceive by attaching this note to his answer as evidence of the claim that he had paid the same when he had not done so.
There are some other facts and circumstances tending to impeach the integrity of Peugh in this transaction; among them the conveyance to McEuen of the lots in controversy *329 and the record of the deed on the very day the bill was filed, without consideration and without McEuen’s knowledge; but it is not worth while to discuss them. Reluctant as we are to set aside a deed that has been executed under the circumstances of this case, where the grantor has been guilty of some negligence, still, upon full consideration, we cannot escape the conclusion, from the evidence, that a great wrong has been done to complainant, which it would be rank injustice to refuse relief for.

The decree appealed from must be affirmed, with costs to the appellee ; and it is so ordered.