LOUISE KING CROMARTIE and B. A. CROMARTIE, her husband, SUE C. KING and EDWIN BIRD KING, *Appellants;* v. EVERGLADE LUMBER COMPANY, a Corporation, *Appellee.*

En Banc.

Opinion filed August 4, 1930.

*C. E. Farrington,* for Appellants;

*McCune, Hiaasen & Fleming,* for Appellee.

ELLIS, J.—On the 23rd day of February, 1924, Louise King Cromartie and her husband, B. A. Cromartie, leased to Samuel Gillian and A. A. Wenger lot three (3) in King's subdivision of lots one (1) two (2) and nineteen (19) in Block Forty (40) of the Town of Fort Lauderdale in what was then Dade County, now Broward County, Florida. The property was also described by metes and bounds. The lease was for a period of three years and carried the water and riparian rights belonging to the south bank of New River and any reversionary right and title to O'Neal Avenue along and adjacent to the west side of lot nineteen (19) should the street at any time be abandoned. The lease contained the following clause:

"It is further agreed that the lessees, their heirs or assigns, in consideration of the premises, may at any time during the continuance of life of this lease, elect to purchase lessors' right and interest in and to said premises for and at the agreed price of eight thousand dollars.

"Should the lessees, their heirs or assigns, elect to purchase said premises as above stated, then and in that case the lessors hereby bind themselves, their heirs and assigns to convey the same by good and sufficient deed of general warranty, free and clear of all incumbrance."

Gillian and Wenger were co-partners engaged in the lumber business at Fort Lauderdale. After the execution of the lease they organized a corporation under the name of "Everglades Lumber Company" to which the lease was assigned by them.

Gillian and Wenger and later the corporation have been continuously in possession of the leased property since the date of the lease and paid the rental according to the terms of the agreement. Prior to the expiration of the lease the corporation exercised its option to purchase the property under the clause quoted above and tendered to the Cromarties the sum of eight thousand dollars and demanded a "good and sufficient deed of conveyance, as they, the said respondents (the Cromarties) had in and by the lease contract and option aforesaid bound and obligated themselves so to do." The Cromarties refused to accept the money and declined to execute the conveyance.

In September, 1918, the Cromarties executed and delivered to Sue C. King and Edwin Bird King a quitclaim to lots one (1) and two (2) and nineteen (19) of Block Forty (40) of the Town of Fort Lauderdale, also any and all strips of land directly in front of Lots one (1), two (2) and nineteen (19) the same being the riparian rights belonging to the south bank of the New River.

In April, 1921, the Everglades Lumber Company exhibited its bill in chancery in the Circuit Court for Broward County against the Cromarties and the Kings for specific performance of the contract of purchase. Appropriate prayers for specific relief were incorporated in the bill.

The record discloses that there was much pleading in the presentation of the issue which was finally submitted to the chancellor in April, 1928. The Kings brought proceedings to evict the Everglades Lumber Company, which in turn

brought a suit against the Kings to restrain them from prosecuting the action in the county court for the eviction of the corporation. A temporary restraining order was granted, the bill of complaint was by order made supplemental to the second amended bill of complaint in the first suit and the cause eventually reached a final hearing on the taking of testimony. The chancellor decreed that the quitclaim to the Kings was void and of no effect and that the Cromarties should "make, execute, acknowledge and deliver to the Everglade Lumber Company, a corporation, its successors and assigns, a good and sufficient deed of general warranty conveying the following described lands situate in Broward County, Florida." The lands were described as set out in the lease. "That the Everglades Lumber Company be authorized to pay to the said Louise King Cromartie and B. A. Cromartie her husband" the sum of eight thousand dollars which had been deposited with the clerk and upon failure of the Cromarties to comply with the decree the complainant should be at liberty to apply to the court for such other orders or decrees as should be appropriate to be entered.

From that decree the Cromarties and the Kings appealed in July, 1928.

There are eight assignments of error attacking the decree. We deem it necessary, however, to discuss only one point presented by the appellants which is that the Cromarties simply agreed to convey in the event of an election to purchase by the lessees the "right and interest" that the lessors had in the premises and they were under no obligation to convey the land by a general warranty deed; that the corporation did not elect to purchase that which the lessors had agreed to convey and that upon the lessees failure to so elect within the time agreed upon the lessors were within their rights when they executed the quitclaim to the Kings.

This is the second appeal in this case. See Cromartie v. Everglades Lumber Co., 94 Fla. 958, 114 So. R. 670. In that case the appeal was taken from orders made on the pleadings in the cause.

We think the evidence tends to establish the facts that the corporation entered upon the lands as the assignee of the lease from Gillian and Wenger, that it made improvements upon the land to the amount of about seven thousand dollars and that about a week before the expiration of the lease it tendered to Mr. Cromartie eight thousand dollars in cash for a deed according to the contract and that it kept its tender good; that the corporation declined to accept a quit claim deed to the property from the Cromarties. It was within its rights in declining to accept such a deed. The Cromarties declined to execute any other conveyance because, as Mr. Cromartie said, they were not in a position to give a deed to the property.

In view of the Chancellor's findings of fact and the pleadings in the case, which should be heard and determined here according to the theory upon which it was tried below, the complainant was entitled under the agreement to a deed of conveyance from the Cromarties to their "right and interest" in and to the land described free and clear of all incumbrances and that such deed should contain a general warranty. Such a deed of conveyance of the "right and interest" of the Cromarties though it might contain covenants of seizing and warranty would not be changed or enlarged by such covenants into a conveyance of the land itself. The grant in the deed being of the "right and interest" of the Cromarties, the warranty would be of the "premises", that is of the estate granted, which is the right and interest of the grantors. It would be equivalent to a warranty of the estate which the grantor then had as of the date of the lease and would be confined to the estate vested.

Such is the doctrine of the case of Coble v. Barringer, (N. C.), 88 So. E. R. 518, L. R. A. 1916E 901.

Such a deed would be sufficient to pass the land itself if the grantor had an estate therein at the time of the conveyance but it would pass no estate which was not then possessed by the party. See Brown v. Jackson, 3 Wheat. (U. S.) 452, 4 L. Ed. 432; Sweet v. Brown, 12 Met. (Mass.) 175, 45 Am. Dec. 243.

The case of Van Rensselaer v. Kearney, 52 U. S. 298, 13 L. Ed. 703, does not hold to a contrary doctrine but on the other hand expressly affirms it. Hanrick v. Patrick, 119 U. S. 156, 30 L. Ed. 396, 7 Sup. Ct. R. 147; Rogers v. Chase, 89 Iowa (text 474) 468, 56 N. W. R. 537; Ballard v. Child, 46 Me. 152; McCamant v. Patterson, 39 Mo. (text 111) 100; White v. Brocaw, 14 Ohio St. (text 344) 339; Burleson v. Burleson, 28 Tex. (text 414) 383; Reynolds v. Shaver, 59 Ark. 299, 27 S. W. R. 78, 43 Am. St. R. 36; Bumpass v. Anderson, (Tex. Civ. App.) 51 S. W. R. 1103.

Such was the character of conveyance the parties contracted for and the bill of complaint prays for no other or broader conveyance. The chancellor found that the evidence supported the allegations of the bill and under a rule of long standing in this court the decree should not be reversed but should be modified requiring a conveyance of the Cromarties' "right and interest" in the land with general warranty instead of a conveyance of the "described lands".

The cause is remanded with directions to modify the decree in accordance with the views expressed in this opinion.

TERRELL, C. J., WHITFIELD, STRUM and BUFORD, J. J., concur.