Peblle, J.,
delivered the opinion of the court:
The questions presented for our consideration are (1) as to the citizenship of the claimant’s decedent at the time of the depredation alleged in the petition, to wit, February 15,1849) and (2) on the defendants’ plea to the effect that at the time of said depredation the intercourse act of June 30, 1834 (4 Stat. L., J31), had not been extended to the then newly acquired Territory of New Mexico.
The action is prosecuted under the act of March 3, 1891 *491 (26 Stat. L., 851), commonly known as the Indian depredation act, the first or jurisdictional section of which reads:
“ Said court shall have and possess jurisdiction and authority to inquire into and finally adjudicate, in the manner provided in this act, all claims of the following classes, namely:
“All claims for property of citizens of the Uuited States taken .or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.”
The claimant in his petition, among other things, avers that the property-of his decedent was taken or destroyed by the defendant Indians on February 15, 1849, in Valencia County, in the Territory of New Mexico.
By the stipulation of article 8 of the convention between the United States and the Republic of Mexico, concluded on the 2d day of February, 1848, the ratifications of which were exchanged on the 30th day of May, 1848 (9 Stat. L., 922, 929), the Territory of New Mexico was ceded to the United States; and respecting the rights of citizens of Mexico then residing in that Territory, Article VIII of the treaty provides:
“Mexicans now established in territories previously belonging to Mexico, and which remain for the future within the limits of the United States, as defined by the present treaty, shall be free to continue where they now reside, or to remove at any time to the Mexican Republic, retaining the property which they possess in the said territories, or disposing thereof, and removing the proceeds wherever they please, without their being subjected, on this account, to any contribution, tax, or charge whatever.
“Those who shall prefer to remain in the said territories may either retain the title and rights of Mexican citizens or acquire those of citizens of the United States. But they shall be under the obligation to make their election within one year from the date of the exchange of ratifications of this treaty; and those who shall remain in the said territories after the expiration of that year, without having declared their intention to retain the character of Mexicans, shall be considered to have elected to become citizens of the United States.
“In the said territories, property of every kind, now belonging to Mexicans not established there, shall be inviolably respected. The present owners, the heirs of these, and *492 all Mexicans who may hereafter acquire said property by contract, shall enjoy with respect to it guaranties equally' ample as if the same belonged to citizens of the United States.”
Under the act referred to, the citizenship of the claimant at the date of the taking or destruction of the property claimed for is made a jurisdictional fact, and such has been the holding of the Supreme Court and of this court.
At the date of the execution of the treaty the claimant’s decedent was a citizen of the Republic of Mexico, residing in the ceded territory, where he continued to reside until his death many years thereafter, haying done no act “within one year from the date of the exchange of ratifications ” of the treaty to signify his election to retain the title and rights of a Mexican citizen.
The question must be determined from the language of the treaty quoted, there being no conflict there with in any other part of the treaty.
It was conceded in the argument that some act of election on the part of the claimant’s decedent, within the year specified, would have been essential to entitle him to retain his rights as a Mexican citizen, but it is contended that no such act was required to entitle him to acquire citizenship in the United States; that having remained in the ceded territory “after the expiration of that year,” he was for that reason considered to have elected to become a citizen of the United States, and having become such, his citizenship related back to the date of the exchange of ratifications of the treaty.
The treaty recognized the claimant’s decedent as a Mexican, entitled to all the rights as such, and gave him one year within which to determine by some act of his whether he would retain that character, and having failed within that year to declare his intention to retain his character as a Mexican, and having thereafter continued to reside in the ceded territory, he thereby became a citizen of the United States by operation of the law embodied in the treaty. Prior to that time he was entitled to the protection of the Mexican Government for any infringement of his lights.
The language of the treaty can not be construed as having changed the claimant’s character as a Mexican citizen during *493 the year and at the same time having' given him that year within which to determine for himself whether he would retain or abandon that character.
Whether the decedent within the year could have elected to acquire citizenship in the United States we need not now decide, since he made no effort to'do' so.
During the year he chose to remain a Mexican citizen, but ' did not elect within that time to retain that character thereafter, and hence he lost the character of a Mexican and became a citizen of the United States, under the terms of the treaty, only by the reason of his nonaction within the year and by thereafter remaining in the ceded territory.
The remaining question presented on this branch of the case is: Did the citizenship thus acquired relate back to the date of the exchange of ratification of the treaty? But we need not pursue this, for conceding, as contended by the claimant on the authority of the case of Osterman v. Baldwin (6 Wall., 116, 122), following the case of Jackson v. Beach (1 Johnson’s Cases, 401), “that naturalization has a retroactive effect so as to be deemed a waiver of all liability to forfeiture and confirmation of his former title,” it will -not avail in the present case.
The citizenship of the claimant at the date of the taking or destruction of the property is a jurisdictional prerequisite, . and that essential condition can not be satisfied by a subsequently acquired citizenship. The liability, if any, arose when the depredation was committed, and as that is alleged to have occurred on the 15th day of February, 1849, some months before the expiration of the year after the date of ratifications, and while the decedent was a citizen of the Republic of Mexico, the court is without jurisdiction.
Having reached this conclusion, it will be unnecessary for us to consider the other question raised by the defendant’s plea respecting the extension of the intercourse act of June 30,1834 (supra), over the newly acquired territory subsequent to the date of the depredation alleged in this case.
The petition is therefore dismissed.