*G. S. Curry* and *C. S. Davis* for defendant.

———————

# IN THE MATTER OF THE PETITION OF MANUEL OLIVIERI SANCHEZ FOR A WRIT OF MANDAMUS AGAINST DAVID KALAUOKALANI, CLERK OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

## No. 1024.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
### HON. S. B. KEMP, JUDGE.

ARGUED OCTOBER 16, 1917.            DECIDED OCTOBER 22, 1917.

ROBERTSON, C.J., QUARLES, J., AND CIRCUIT JUDGE ASHFORD IN PLACE OF COKE, J., ABSENT.

TREATIES—*statutes—citizens—transfer of allegiance.*

By the provisions of the treaty of Paris a Spanish subject residing in Porto Rico on April 11, 1899, and who continued to reside there for one year thereafter and did not make a declaration before a court of record of his decision to preserve his allegiance to the crown of Spain, became an American subject, and was, under the provisions of the act of Congress of April 12, 1900, a citizen of Porto Rico and did not lose his political status by removing in 1901 from Porto Rico to Hawaii.

CITIZENS—*elections—registration of voters.*

A native of Porto Rico who was an inhabitant thereof on the eleventh day of April, 1899, and continuously resided there until the summer of 1901, after which he continuously resided in the Territory of Hawaii, claiming at all times after April 11, 1899, to be a subject of the Republic of the United States, was, at the passage of the act of Congress of March 2, 1917, to provide a civil government for Porto Rico and for other purposes, a citizen of Porto Rico as defined by section 7 of the act of Congress of April 12, 1900, and is, by the provisions of section 5 of said act of March 2, 1917, deemed and declared to be a citizen of the United States.

MANDAMUS—*right to be registered as a voter.*

A citizen of the United States who has resided in the city and county of Honolulu for more than one year next preceding his application to be enrolled in the great register of such municipality as a voter has the right to such registration, and when such right is denied him by the officer whose duty it is to register him he is entitled to a writ of mandamus to enforce such right.

APPEAL AND ERROR—*moot question—elections—mandamus.*

The election laws provide for a permanent registration of voters; the right of registration of one entitled thereto is a continuing one; and when this right is sought to be enforced by mandamus the issue raised by a return to the alternative writ does not become a moot question by the happening of a primary election held soon after the proceedings for mandamus were instituted.

OPINION OF THE COURT BY QUARLES, J.

The petitioner filed his petition for a writ of mandamus directed to the respondent as clerk of the city and county of Honolulu commanding and directing said respondent to register and enter upon the great register of the city and county of Honolulu the name of the petitioner as a voter in the said city and county, in the circuit court of the first judicial circuit. An alternative writ of mandamus issued as demanded and to said writ the respondent made return. From the alternative writ and from oral evidence heard at the hearing upon the return to the writ the following undisputed facts appear: The petitioner was born in Yauco, Porto Rico, January 20, 1888, of parents who were natives

of Porto Rico; petitioner's father was at the time of and after the cession of Porto Rico to the United States by the treaty of Paris a resident of Porto Rico and held the office of mayor of a town in Porto Rico as late as July, 1900; petitioner's father died in Porto Rico and thereafter petitioner, then nearly thirteen years and seven months old, left Porto Rico with his mother and came to the Territory of Hawaii, arriving here on the twenty-second day of September, 1901, since which time the petitioner has resided in the Territory of Hawaii, and during the last four years has resided in the city and county of Honolulu; neither the petitioner nor his father elected to retain allegiance to the crown of Spain under the provisions of the treaty of Paris but at all times after the ratification of that treaty claimed to be American subjects; on the eleventh day of April of the present year the petitioner applied in person to the respondent as clerk of the city and county of Honolulu to be enrolled upon the great register of the city and county of Honolulu as a voter, but respondent as such clerk refused to register the petitioner as a voter, claiming that under the facts above stated the petitioner was not and is not a citizen of the United States and therefore not entitled to register as a voter. These facts appear in the alternative writ issued out of the circuit court of the first circuit and are not traversed in the return, but in the return the respondent claims that under the provisions of the treaty of Paris and subsequent legislation of Congress the petitioner is not a citizen of the United States and therefore not entitled to be registered as a voter in the city and county of Honolulu, Territory of Hawaii. Upon hearing the return to the alternative writ the circuit court denied the peremptory writ of mandamus demanded, dismissed the alternative writ and discharged the respondent with costs. From the

judgment, and to reverse the same, the petitioner has appealed to this court.

The questions to be decided here are purely questions of law and involve the application of the provisions of articles II and IX of the treaty of peace between Spain and the United States ratified April 11, 1899; section 7 of the act of Congress of April 12, 1900 (31 Stat. L. p. 79); and section 5 of the act of Congress of March 2, 1917 (39 Stat. L. p. 953). Articles II and IX of the treaty with Spain read as follows:

"Spain cedes to the United States the Island of Porto Rico and other islands now under Spanish sovereignty in the West Indies, and the Island of Guam in the Marianas or Ladrones" (Art. II).

"Spanish subjects, natives of the Peninsula, residing in the Territory over which Spain by the present treaty relinquishes or cedes her sovereignty, may remain in such territory or may remove therefrom, retaining in either event all their rights of property, including the right to sell or dispose of such property or of its proceeds; and they shall also have the right to carry on their industry, commerce and professions, being subject in respect thereof to such laws as are applicable to other foreigners. In case they remain in the territory they may preserve their allegiance to the Crown of Spain by making, before a court of record, within a year from the date of the exchange of ratifications of this treaty, a declaration of their decision to preserve such allegiance; in default of which declaration they shall be held to have renounced it and to have adopted the nationality of the territory in which they may reside.

"The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress" (Art. IX).

Section 7 of the act of Congress of April 12, 1900, is as follows:

"That all inhabitants continuing to reside therein who were Spanish subjects on the eleventh day of April,

eighteen hundred and ninety-nine, and then resided in Porto Rico, and their children born subsequent thereto, shall be deemed and held to be citizens of Porto Rico, and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain on or before the eleventh day of April, nineteen hundred, in accordance with the provisions of the treaty of peace between the United States and Spain entered into on the eleventh day of April, eighteen hundred and ninety-nine; and they, together with such citizens of the United States as may reside in Porto Rico, shall constitute a body politic under the name of The People of Porto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such."

Section 5 of the act of Congress of March 2, 1917, is as follows:

"That all citizens of Porto Rico, as defined by section seven of the Act of April twelfth, nineteen hundred, 'temporarily to provide revenues and a civil government for Porto Rico, and for other purposes,' and all natives of Porto Rico who were temporarily absent from that island on April eleventh, eighteen hundred and ninety-nine, and have since returned and are permanently residing in that island, and are not citizens of any foreign country, are hereby declared, and shall be deemed and held to be, citizens of the United States: *Provided,* That any person hereinbefore described may retain his present political status by making a declaration, under oath, of his decision to do so within six months of the taking effect of this Act before the district court in the district in which he resides, the declaration to be in form as follows:

" 'I, .........., being duly sworn, hereby declare my intention not to become a citizen of the United States as provided in the Act of Congress conferring United States citizenship upon citizens of Porto Rico and certain natives permanently residing in said island.'

"In the case of any such person who may be absent from the island during said six months the term of this proviso may be availed of by transmitting a declaration, under

oath, in the form herein provided within six months of the taking effect of this Act to the executive secretary of Porto Rico: *And provided further,* That any person who is born in Porto Rico of an alien parent and is permanently residing in that island may, if of full age, within six months of the taking effect of this Act, or if a minor, upon reaching his majority or within one year thereafter, make a sworn declaration of allegiance to the United States before the United States District Court for Porto Rico, setting forth therein all the facts connected with his or her birth and residence in Porto Rico and accompanying due proof thereof, and from and after the making of such declaration shall be considered to be a citizen of the United States."

By said treaty it was the intent of both contracting parties to transfer to the United States all sovereignty in Porto Rico and other islands therein named and to give to the inhabitants of Porto Rico, then and theretofore subjects of Spain, the right to determine for themselves whether they would remain subjects of Spain or become subjects of the United States. In order to retain their allegiance to the crown of Spain it was provided that those so desiring should within one year make before a court of record a declaration of their decision to preserve allegiance to the crown of Spain, and upon failure to make such declaration within such time they should be held to have renounced such allegiance and to have adopted the nationality of the Territory in which they might reside. By virtue of the provisions of this treaty the petitioner's father and the petitioner must be held to have renounced their allegiance to the crown of Spain and to have adopted the nationality of the American republic to which they had been attached, as neither the petitioner nor his father made the declaration required to preserve, under the terms of the treaty, his allegiance to the crown of Spain. It is thus seen that at the expiration of one year from the ratification of the said treaty, to wit, from April 12, 1900,

the political status of the father of petitioner and of the petitioner was fixed; they were on April 11, 1899, Spanish subjects and they resided in Porto Rico; they remained in Porto Rico until the expiration of the year and elected to renounce their Spanish allegiance and adopt the nationality of the United States, and thereby became citizens of Porto Rico as defined by the said act of April 12, 1900. So far, and up to the time that petitioner left Porto Rico and came to Hawaii, there has been no change in his political status and he was then a citizen of Porto Rico, and at all times since April 12, 1900, the petitioner has been a subject of the United States and was not a Spanish subject, and this political status existed at the time of the enactment and taking effect of the act of Congress of March 2, 1917. By the terms of the latter act it is expressly declared that all citizens of Porto Rico "as defined by section seven of the Act of April twelfth, nineteen hundred" shall be deemed and held to be citizens of the United States. There is nothing in the act showing an intent to exclude from its operation persons who are, by the definition found in section 7 of the act of 1900, citizens of Porto Rico, but who were at the date of the act of March 2, 1917, absent from Porto Rico. The first proviso found in section 5 of the act last named, wherein it is provided "that any person hereinbefore described may preserve his present political status" by making the declaration therein prescribed, applies to those inhabitants of Porto Rico who were absent from Porto Rico at the date of the ratification of the treaty with Spain but thereafter returned to Porto Rico, and they were given the opportunity of preserving their allegiance to the crown of Spain by making the declaration therein prescribed. It is possible that this proviso may have been intended to confer upon citizens of Porto Rico the right to reject full-fledged citizenship, and remain merely American subjects, but it is not necessary to, and

we do not, decide this point. The language, "are hereby declared, and shall be deemed and held to be, citizens of the United States" used by Congress, shows the intent to immediately invest citizens of Porto Rico with United States citizenship, and there is no claim that the petitioner ever exercised the option (if it was given him) to reject the citizenship conferred by the act, but the contrary does appear. Our attention has not been called to any decision applying the provisions of the said treaty and statutes to a case like the one before us. The decision in *Vallejos* v. *United States*, 35 Ct. Cl. 489, is based upon treaty provisions unlike those in question here, and is easily distinguished from the case at bar.

We hold that by virtue of the provision of section 5 of the act of Congress of March 2, 1917, the petitioner became a full-fledged citizen of the United States at the time that the said act went into effect, and as he has resided in the Territory of Hawaii and in the city and county of Honolulu for more than one year prior to his application to be registered he was entitled to have his name enrolled upon the great register of the city and county of Honolulu as a voter, and that it was and is the duty of the respondent to so enroll and register the petitioner. This duty is a ministerial one which may be enforced by mandamus. The alternative writ was erroneously dismissed and the peremptory writ demanded should have been granted and issued.

It is argued on behalf of the respondent that inasmuch as the primary election, which took place soon after the application of the petitioner to be registered was denied, has since taken place, that the right of the petitioner to be registered has become a moot question, for which reason this appeal should be dismissed. We cannot accept this view. The election laws of Hawaii provide for permanent registration and the application of the petitioner was for

such registration and his right to the remedy herein sought is a continuing one and did not expire with the holding of the primary election mentioned.

The judgment denying the permanent writ of mandamus demanded and dismissing the alternative writ is reversed and the cause remanded to the circuit judge for further proceedings consistent with the views herein expressed.

*J. B. Lightfoot* (*Lightfoot & Lightfoot* on the brief) for petitioner.

*A. M. Cristy,* First Deputy City and County Attorney (*A. M. Brown,* City and County Attorney, with him on the brief) for respondent.